**STATE OF LOUISIANA and the Louisiana Department of Public Welfare**

v.

**Dr. Earl L. BUTZ, Secretary of The United States Department of Agriculture.**

**Civ. A. No. 71–384.**

United States District Court,
M. D. Louisiana.

June 7, 1974.

William J. Guste, Jr., La. State Atty. Gen., J. Marvin Montgomery Sp. Counsel, Dept. of Justice, Baton Rouge, La., for plaintiffs.

Douglas M. Gonzales, U. S. Atty., M. D. La., Robert S. Leake, Asst. U. S. Atty., M. D. La., Baton Rouge, La., for defendant.

E. GORDON WEST, District Judge:

This case comes to the Court on two motions, one by the plaintiff for summary judgment and one by the defendant for summary judgment. The facts of the case have been stipulated to and are essentially as follows.

Under 7 U.S.C. § 2011 et seq. (popularly referred to as the Food Stamp Act), and under the regulations promulgated by the United States Department of Agriculture pursuant thereto, the Department of Agriculture and the various States were authorized to enter into agreements whereby food stamps would be distributed to eligible residents residing in the State. The State of Louisiana did enter into an agreement with the Department of Agriculture whereby the Department delivered food stamps to the Louisiana Department of Public Welfare, plaintiff herein, and the said Department of Public Welfare distributed these stamps to eligible recipients residing in the State of Louisiana. Plaintiff opened a distribution center in St. Landry Parish in Louisiana and persons residing in that area applied for and purchased books of stamps for amounts considerably less than the face value of the stamps. Monies received from these sales by the plaintiff were then turned over to the defendant, Department of Agriculture. Before receiving stamps the recipients thereof were required to sign their names on the books of stamps which they had purchased, and the grocers who gave the recipients food stuffs in exchange for the stamps were required to have the person purchasing the food submit the book with their signature, together with a signed card showing such

person to be eligible for the food stamps. In St. Landry Parish, the plaintiff kept its supply of food stamps in a commercial safe, and all doors and windows to the building were locked and all other normal security precautions were taken. The security measures taken by the plaintiff and the safe used to lock up the food stamps and to protect them from theft had been inspected by and approved by the Department of Agriculture. Despite these precautions having been taken, burglars broke into the food stamp center some time between September 12 and September 15, of 1969, and stole stamps having a face value of approximately $67,000. There is no evidence to indicate that there was any negligence of any kind on the part of the plaintiff, Department of Public Welfare, or on the part of any of its agents or employees which contributed in any way to the theft of the food stamps. At the time of this burglary, the food stamps contained no serial numbers and therefore there was no way to ascertain whether or not the stamps were cashed and subsequently presented for redemption. However, no recovery of the food stamps was made during the investigation, and there is no evidence of any kind to show that any of the food stamps have in fact been presented for redemption. The theft of the stamps was immediately reported by the plaintiff to the defendant, Department of Agriculture, and thereafter, the Department of Agriculture, unilaterally, and without giving the plaintiff any opportunity to be heard, concluded that the plaintiff, Department of Welfare, was liable for the full face value of the stolen stamps, and in a letter dated January 14, 1970, the Department of Agriculture demanded full and immediate payment of the face value of the stolen stamps. Immediately thereafter the Louisiana Department of Public Welfare, plaintiff herein, disputed its liability and refused to pay for the stolen stamps. Thereafter, on August 23, 1971, the defendant, Department of Agriculture, withheld the sum of $9,500 in funds due to the plaintiff, Department of Public Welfare, under the Food Stamp Act as partial reimbursement for the value of the stolen stamps. This suit followed wherein the plaintiff seeks a declaratory judgment to the effect that the defendant, Department of Agriculture, is without authority to withhold these funds which are otherwise due to the plaintiff, and the plaintiff seeks a mandatory injunction enjoining the defendant from withholding funds due the State of Louisiana, Department of Welfare, under the provisions of the Food Stamp Act of 1964, 7 U.S.C. § 2024(b).

The case was submitted to this Court on these stipulated facts and both sides have filed briefs in support of their motions for summary judgment. After due consideration, this Court concludes that the plaintiff is entitled to the relief which it seeks and that the defendant should be enjoined from holding the plaintiff liable for the value of the stamps stolen from the St. Landry Parish center.

A case identical to this was decided by the United States District Court for the District of New Mexico on March 29, 1973, but the opinion rendered therein is apparently unreported. It bears Docket No. 9276 on the Civil Docket of the United States District Court for the District of New Mexico and is entitled "New Mexico Department of Health and Social Services and Security Insurance Company of Hartford vs. Secretary of Agriculture, Department of Agriculture, Director of the Food and Nutrition Service, Food and Nutrition Service, and Director of the Finance and Accounting Division (FNS)." In that case, as in the present case, the United States Government contended that the Food Stamp Act imposes strict liability on the state agency for the loss of stamps as a result of burglary. But the Court in that case held that strict liability was not imposed upon the State, but at the most, the State was acting pursuant to a common law principal-agent relationship with the State being the agent for the Department of Agriculture. The Court then

held that the State was under no greater duty than to use reasonable care and diligence to protect its principal's property from theft, and that since the facts did not establish a breach of that duty, there was no liability on the part of the State agency.

It is necessary to look at the Food Stamp Regulations that were in effect at the times here involved (7 C.F.R. § 1600 et seq.) to see whether or not strict liability was imposed upon the State for the loss of food stamps. The particular portion of the regulation involved provided, at the time of this occurrence, as follows:

"(b) If C&MS (Consumer and Marketing Service) determines that there has been a failure on the part of the State agency to account fully for coupons distributed to it, or the sums authorized to be collected by it in payment of the purchase requirement including the cash equivalent of any vouchers or warrants accepted by it in accordance with § 1601.6(c), the State agency shall, on demand by C&MS, pay to C&MS, in accordance with instructions issued by C&MS, the amount due as a result of such failure." 7 C.F.R. § 1601.7(b).

The defendant contends that the words "to account fully" imposes strict liability on the State agency to "pay for" all stamps used or missing. In other words, they take the position that this regulation imposes a strict liability on the State agency not only to explain the absence of stamps but to actually pay the face value of the stamps to the Department of Agriculture. The plaintiff, on the other hand, contends that it has "accounted fully" for the stamps in that it has properly and promptly notified the defendant of the theft thereof. This regulation simply provides that if there is a failure on the part of the State agency to fully account for coupons, then it shall, on demand, pay whatever amount results from its failure "to account fully" for the stamps issued to it. Looking at other provisions in the regulations issued by the Department of Ag-

riculture, as they appeared at the times pertinent hereto, it is noted that they set forth specific requirements for the storage and handling of these stamps. For example, 7 C.F.R. § 1600.4(c) required that a State agency having custody, care or control of coupons "shall at all times use care and caution in receiving, storing, transmitting, or otherwise handling coupons" and that such agency shall also "use care and caution in safeguarding coupons from theft, embezzlement, loss, damage or destruction." In 7 C.F.R. § 1601.6(c) it was provided that the State agency shall arrange for "(1) the adequate safekeeping" of coupons issued to it, and in 7 C.F.R. § 1601.6(f) it was provided that the State agency shall arrange for the reconciliation of coupon inventories and that "All such receipts shall be properly safeguarded at all times and deposited in accordance with the instructions issued by C&MS."

If the regulations in effect at that time imposed a strict liability on the State agency for loss of coupons by theft, there would have been no need for regulations instructing the State as to how it should handle and safeguard the coupons. The obvious purpose of those regulations was to set forth the standard of care which was required of the State while it is acting as an agent for the Department of Agriculture in the handling of these food stamp coupons. If that standard of care was in fact used, and if there is no showing of negligence or absence of due care on the part of the State, then there is no liability for the loss of coupons by theft.

For these reasons, the motion of the defendant for summary judgment will be denied, and the motion of the plaintiff for summary judgment will be granted. Judgment will be entered in accordance herewith declaring that the plaintiff is not liable to the defendant for the value of the food stamps stolen from the plaintiff's St. Landry Parish food stamp distribution office, and setting aside the defendant's action in withholding $9,500 of funds otherwise due to the

**706**

plaintiff under the food stamp program. Counsel for the plaintiff is instructed to present to the Court a proposed judgment in accordance herewith.