**Kalman R. HETTLEMAN et al.**

v.

**Robert BERGLAND et al.**

Civ. No. Y-78-2039.

United States District Court,
D. Maryland.

Nov. 23, 1979.

Carolyn I. Polowy, Asst. Atty. Gen., Baltimore, Md., for plaintiffs.

Anne M. Gulyassy, Washington, D.C., and Glenn L. Cook, Asst. U. S. Atty., Baltimore, Md., for defendants.

JOSEPH H. YOUNG, District Judge.

This case, before the Court on cross-motions for summary judgment, arises under The Food Stamp Act of 1964, 7 U.S.C. §§ 2011–2026, and involves a dispute between the State of Maryland Department of Human Resources (DHR) and the United States Department of Agriculture Food and Nutrition Service (USDA–FNS) over the validity of USDA regulation 7 C.F.R. § 271.7(b) (1971) [since renumbered 7 C.F.R. § 271.7(c) (1976) and referred to hereafter as § 271.7(c)] insofar as it imposes a standard of strict liability on the State for the face value of food stamps stolen after they have been delivered into the custody of the State or its distributing agents and the action of the USDA in setting off the face value of food stamps stolen in 1976 from three Maryland distribution centers against the State's 1978 federal letter of credit.*

## THE FOOD STAMP ACT OF 1964

### Background

The Food Stamp Act of 1964 was amended a number of times after its initial enactment and was eventually replaced by The Food Stamp Act of 1977 (1977 Act). Unless specifically noted, the following discussion is based on the terms of the Act, as amended, which was in effect at the time of the Maryland thefts in 1976 (1964 Act).

The 1964 Act authorized the USDA to issue coupons in various denominations for purchase by eligible households at rates below their face value. The USDA issued the coupons to participating state agencies, which handled the distribution to eligible recipients. The recipients, in turn, used the coupons at their face value to purchase food and other commodities listed in the Act from approved retail and wholesale food concerns. The food stamps, or coupons, "issued and used as provided in [the] Act," were (and still are) redeemable at face value by the USDA–FNS through the facilities of the United States Treasury and were "deemed to be obligations of the United States within the meaning of title 18, United States Code, section 8." 7 U.S.C. §§ 2013(a), 2023(d).

### State Responsibility and Liability Provisions in the 1964 Act

The states which elected to participate in the food stamp program were responsible under the terms of the Act for certifying eligible recipients in accordance with criteria established by the USDA, for designating and approving coupon vendors and participating retail and wholesale food suppliers, and, in general, for administering the food stamp program under plans and procedures drawn up by the states and approved by the USDA. The costs of the benefits provided under the Act were borne by the federal government, and, in addition, 7 U.S.C. § 2024(b) authorized the Secretary of

---

\* A dispute over a theft from a fourth distribution center has been settled since the filing of the plaintiffs' original claim and the value of those stamps restored to the State's federal letter of credit.

Agriculture to pay to each state an amount equal to 50% of its administrative costs, provided that no such payment be made to any state "unless the Secretary is satisfied pursuant to regulations which he shall issue that an adequate number of qualified personnel are employed by the State in the program to administer the program efficiently and effectively."

Apart from the responsibility for efficient and effective administration, the only specific references to state liability in the Act were to be found in 7 U.S.C. § 2019. § 2019(f) provided that, if the Secretary determined that in the administration of the program a state agency had failed to comply substantially with the provisions of the Act or with regulations issued pursuant thereto, and if that state agency failed to correct such failure within a reasonable period of time, "the Secretary shall direct that there be no further issuance of coupons in the political subdivisions where such failure has occurred until such time as satisfactory corrective action has been taken." § 2019(g) provided:

If the Secretary determines that there has been gross negligence or fraud on the part of the State agency in the certification of applicant households the State shall upon request of the Secretary deposit into the separate account authorized by . . . this Act, a sum equal to the amount by which the value of any coupons issued as a result of such negligence or fraud exceeds the amount that was charged for such coupons . . . .

Rule–Making Authority Under the Act

The 1964 Act contained fifteen separate provisions authorizing the Secretary to promulgate regulations. Fourteen of those related to specific aspects of the administration of the food stamp program. There was no provision specifically authorizing the promulgation of regulations establishing state liability under the Act. However, § 2013(c) provided:

"The Secretary shall issue such regulations, not inconsistent with this Act, as he deems necessary or appropriate for the effective and efficient administration of the food stamp program."

Pursuant to that general grant of rule-making authority, the USDA in 1971 promulgated the contested regulation, which provides as follows:

If FNS determines that there has been a loss of coupons distributed to the State agency, or of the sums required to be collected by it in payment of the purchase requirement, including the cash equivalent of any vouchers or warrants accepted by it in accordance with § 271.6(c), including, but not limited to, coupons or funds lost as a result of thefts, embezzlements or unexplained causes, the State agency shall, on demand by FNS, pay to FNS the face amount of any such coupons, and the amount of such cash or cash equivalent. Coupons which are lost will be presumed to have been redeemed in the customary channels of redemption: Provided, that that State agency will be relieved of liability for such coupons which it establishes to the satisfaction of FNS were recovered or destroyed prior to presentation for redemption.

FACTUAL BACKGROUND OF
THIS DISPUTE

The Department of Human Resources (DHR) has been designated by the State of Maryland to administer the food stamp program in the state, and the actual operation of the program is handled by the Social Services Administration (SSA) offices in Baltimore City and in the 23 Maryland counties. During fiscal year 1976, the total value of coupons distributed to certified eligible recipients in Maryland amounted to $134,100,421. During that year, there were thefts of stamps and cash from distribution centers in Baltimore City and in Allegany, Wicomico and Charles Counties in the total amount of $113,962, or approximately .08% of the total. Of that amount, stamps and cash totaling $7,818 stolen from Baltimore City are no longer at issue, reducing the total disputed amount to $106,144.

Although there was no allegation of negligence on the part of the state agencies

from which the stamps were stolen, nor any evidence offered to indicate that the stolen stamps were actually redeemed by the Treasury, the USDA–FNS demanded reimbursement of the face value of the stolen stamps pursuant to the terms of the above-quoted regulation. When the State refused to comply with the demand, the USDA reduced payment of its 50% share of administrative costs by deducting the disputed amount from the State's 1978 federal letter of credit.

DHR then brought suit against USDA–FNS under the 1964 Act, 7 U.S.C. § 2011 *et seq.*, and the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, asserting jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1337, and 5 U.S.C. §§ 701–706 *et seq.*, and claiming an amount in controversy in excess of $10,000. Pursuant to 28 U.S.C. § 1361 (providing for mandamus) and 28 U.S.C. § 2201 (providing for declaratory relief), the State asks the Court to declare the action of USDA–FNS null and void; to order the withheld funds restored to its 1978 letter of credit; and to declare the regulation, 7 C.F.R. § 271.7(c) (1976), unenforceable.

The State has offered a three-pronged argument to support its claim for relief:

1. that the regulation imposing upon the State a standard of strict liability for lost or stolen food stamps has no basis in the statute and that the promulgation of such a standard exceeded the Secretary's rule-making authority under the 1964 Act;

2. that the regulation was not promulgated in accordance with the requirements of the Administrative Procedure Act (APA); and

3. that there was no statutory basis for the reduction of the federal share of administrative costs by setting off the value of the stolen cash and coupons against the State's federal letter of credit and that the set-off violated the terms of the 1964 Act.

An analysis of the 1964 Act indicates that the promulgation of regulation 7 C.F.R. § 271.7(c) (1976) exceeded the rule-making authority granted to the Secretary by the Act, and summary judgment must be granted to the plaintiffs. It is therefore not necessary to consider the plaintiffs' second and third arguments.

## ANALYSIS

■ All parties agree that the 1964 Act contained no provision making participating states liable for the value of the coupons in their possession absent fraud or gross negligence in the certification of eligible recipients. Nor did the Act contain any provision specifically authorizing the Secretary of Agriculture to promulgate regulations regarding state liability. For the contested regulation to fall within the Secretary's authority, therefore, it must meet the requirements of § 2013(c). Not only must it have been deemed "necessary or appropriate for the effective and efficient administration of the food stamp program," it must also be consistent with the provisions of the Act as a whole.

While acknowledging that the Act was silent on states' liability for stolen food stamps and that the only specific liability provisions in the Act established a standard of fraud or gross negligence, the defendants contend that some standard of state liability was necessary to the effective and efficient administration of the food stamp program and that, using the rationale of *Knebel v. Hein*, 429 U.S. 288, 97 S.Ct. 549, 50 L.Ed.2d 485 (1977), the Secretary was empowered by § 2013(c) to select any standard he deemed appropriate, including a standard of strict liability.

In *Knebel*, the Court considered USDA regulations defining income for the purpose of determining eligibility under the food stamp program and observed that the Secretary might have defined income in a number of ways and chose one. "But the availability of alternatives does not render [his] choice invalid." *Id.* at 294, 97 S.Ct. at 553.

In *Mourning v. Family Publications Service*, 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973), upon which the defendants also rely, the Court considered a Federal Reserve Board regulation promulgated pursu-

ant to general rule-making authority under the Truth in Lending Act. Citing earlier cases which had upheld the validity of administrative regulations, the Court said that, where a statute authorizes the promulgation of such rules and regulations as may be necessary to carry out the provisions of the Act, validity of a regulation will be sustained so long as it is " 'reasonably related to the purposes of the enabling legislation.' " *Id.* at 369, 93 S.Ct. at 1661.

The issue now before the Court is clearly distinguishable from the issues in *Knebel* and *Mourning* and from the issues before the courts in earlier cases cited in *Mourning* such as, *e. g., Thorpe v. Housing Authority*, 393 U.S. 268, 280–81, 89 S.Ct. 518, 21 L.Ed. 474 (1969) (purpose of the Act to provide suitable living environment clearly implemented by regulation prohibiting eviction of tenant from federally subsidized housing without explanation); *American Trucking Associations v. United States*, 344 U.S. 298, 309–10, 73 S.Ct. 307, 97 L.Ed. 337 (1953) (upholding regulation designed to cure abuses at which legislation was aimed); *Gemsco, Inc. v. Walling*, 324 U.S. 244, 65 S.Ct. 605, 89 L.Ed. 921 (1945) (upholding regulation under Fair Labor Standards Act on ground that the regulation was necessary to avoid self-nullification of the statute and "absolutely essential" to maintain the wage rate); *Charnita, Inc. v. Federal Trade Commission*, 479 F.2d 684 (3rd Cir. 1973) (regulation sustained as within power of the Board to prevent non-compliance with statute via subterfuge).

■ The purpose of the 1964 Act as set forth in its Declaration of Policy was to alleviate hunger and malnutrition by "permit[ting] low-income households to purchase a nutritionally adequate diet through normal channels of trade." 7 U.S.C. § 2011. A regulation defining income, such as that considered in *Knebel*, was "reasonably related to the purposes" of the Food Stamp Act, and the Court noted that "the implementation of the statutory purpose provides a sufficient justification for . . . the federal regulations . . . ." 429 U.S. at 296–97, 97 S.Ct. at 555. That regulation

could therefore be deemed necessary to the effective and efficient administration of the food stamp program. The same cannot be said for the regulation now before the Court.

Assuming *arguendo* that it was necessary or appropriate to the effective and efficient administration of the food stamp program to impose some standard of liability on the states for lost or stolen coupons, the defendants contend that it was more rational to impose a strict liability standard than to try to determine whether the state had been negligent in its storage, handling or accounting of coupons. The defendants do not explain, however, how the effective and efficient administration of a program designed to alleviate hunger and malnutrition can be furthered by placing an additional burden on the very entities—the states and their designated agencies—which are responsible for delivering the federal benefits offered by the program. On the contrary, it appears more rational to fear that the imposition of too onerous a burden on the states might impel them to withdraw from the program, thus depriving their citizens of those benefits and frustrating the purpose of the Act.

Plaintiffs argue that the strict liability standard of § 271.7(c) is inconsistent with the 1964 Act in several respects. The most obvious argument, of course, draws an inference from the fact that the Act imposes on the states the lower standard of gross negligence or fraud in the certification of food stamp recipients.

A second, but probably more pertinent, argument can be derived from the fact that § 2013(c) represents a narrower grant of rule-making authority than that contained in other legislation in that it limits the issuance of regulations to those necessary or appropriate to the "administration" of the food stamp program rather than, like the Truth in Lending Act, regulations "necessary to carry out the provisions of the Act." Considering that § 271.7(c) was promulgated under the authority of § 2013(c), the loss or theft of coupons must be viewed as an administrative problem. Therefore,

in the absence of any specific provision in the Act relating to lost or stolen coupons, any regulation addressing the problem must fit within the guidelines of 7 U.S.C. § 2019, which deals with administration of the food stamp program.

As further support for that argument, the defendants have acknowledged that food stamps were intended by Congress to be obligations of the federal government but urge that the federal obligation be limited to the redemption of coupons "issued and used as provided in [the] Act . . . ." 7 U.S.C. § 2013(a). Defendants, therefore, appear to argue that stolen coupons are coupons that have been improperly issued.

Both arguments lead to the conclusion that the question of the states' liability for stolen food stamps must be governed by § 2019(f), which deals with a failure by a state agency to comply substantially with the provisions of the Act and which provides that, in the event of a failure of the state agency to comply, the Secretary "shall inform such State agency of such failure and shall allow the State agency a reasonable period of time for the correction of such failure. Upon the expiration of such period, the Secretary shall direct that there be no further issuance of coupons in the political subdivisions where such failure has occurred until such time as satisfactory corrective action has been taken." The "corrective" procedure mandated by § 2019(f) is a far cry from the strict liability provisions of the disputed regulation.

So, too, are the provisions of 7 U.S.C. § 2015, entitled "Issuance and Use of Coupons," pursuant to which "[t]he Secretary shall by regulation prescribe appropriate procedures for the delivery of coupons to coupon vendors and for the custody, care, control, and storage of coupons in the hands of coupon vendors in order to secure such coupons against theft, embezzlement, misuse, loss, or destruction." 7 U.S.C. § 2015(c)(1). (By the terms of § 2012(o), a "coupon vendor" is the "person, partnership, corporation, organization, political subdivision, or other entity with which a State agency has contracted for, or to which it has delegated administrative responsibility in connection with, the issuance of coupons to households.") § 2015(c)(1) seems firmly to place the responsibility for establishing procedures for the protection of food stamps against loss or theft on the USDA rather than on the states or their designated agencies.

Defendants point to nothing in the Act to support their contention that the imposition of a strict liability standard is not inconsistent with the Act. In fact, they indicate in the memorandum supporting the defendants' motion for summary judgment that the real purpose of the regulation is to guard against negligence on the part of the states, noting that "[a]ny loss, whether by theft or otherwise, may be the result of inadequate procedures by the state to safeguard coupons in its possession." Defendants' Memorandum at 9.

The thrust of the defendants' support for the regulation seems to be that, in view of the fact that the federal government is required under the Act to bear most of the risk involved in the issuance of food stamps, it is fair to ask the states to assume that risk when the coupons are in their custody. While there may be support for that viewpoint, that support cannot be found in the legislation pursuant to which the USDA promulgated its regulation.

PRIOR JUDICIAL INTERPRETATIONS

There have been no reported cases interpreting 7 C.F.R. 271.7(c) (1976). However, both the plaintiffs and the defendants have cited *New Mexico Department of Health and Social Services v. Secretary of Agriculture*, 376 F.Supp. 953 (D. N.M.1973), which dealt with 7 C.F.R. § 1601.7(b), the predecessor regulation, which was in effect in 1970 when food stamps were stolen from a New Mexico food stamp distribution center. § 1601.7(b) provided that in the event of a failure on the part of the State agency "to account fully for the coupons distributed to it" the USDA could demand payment of the amount due as a result of such failure. The USDA took the position that the regulation made the State of New Mexico strictly lia-

ble for the stolen coupons. New Mexico countered with the argument that the regulation merely imposed upon the state a duty to "account for" coupons delivered to it and took the position that it had accounted for those coupons by reporting them stolen. The court held that the language of the regulation was ambiguous and did not sustain the imposition of strict liability. In its opinion, the court noted that the regulation had been changed in 1971 to delete the "account for" language and expressly to make state agencies liable for the face amount of stamps lost by theft. Despite the defendants' assertion to the contrary, the court expressed no opinion on the validity of the revised regulation. The court did observe, however, that "defendants' interpretation imposing strict liability is inconsistent with other parts of the Food Stamp Program regulations" and that "[t]here is nothing in the Food Stamp Act of 1964 to support their interpretation." *Id.* at 955.

The earlier, "account for," regulation was also considered in *State of Louisiana v. Butz*, 376 F.Supp. 703 (M.D. La.1974), with the same result. In that case, the court noted the existence of *regulations* instructing the state as to how it should handle and safeguard food stamps and observed that the purpose of those regulations was to "set forth the standard of care which was required of the State while it is acting as an agent for the Department of Agriculture in the handling of . . . food stamp coupons. If that standard of care was in fact used, and if there is no showing of negligence or absence of due care on the part of the State, then there is no liability for the loss of coupons by theft." *Id.* at 705. The district court in Louisiana observed that "[i]f the regulations in effect at that time imposed a strict liability on the State agency for loss of coupons by theft, there would have been no need for regulations instructing the State as to how it should handle and safeguard the coupons." *Id.*

■■ Although the defendants correctly point out that there may be independent reasons for establishing a uniform standard of care—*e. g.*, the need to maintain public confidence in the administration of the food stamp program—the coincidence of a requirement in the 1964 Act that the Secretary promulgate regulations prescribing procedures for the protection of food stamp coupons against theft, specific procedures in the Act to deal with improper administration, and silence on the subject of states' liability for stolen coupons indicates that Congress did not intend in the 1964 Act to make the states strictly liable for stolen coupons absent some form of negligence or malfeasance on the part of the participating state agencies.

## SUBSEQUENT LEGISLATION

The Food Stamp Act of 1977 contains the following provision:

Notwithstanding any other provision of this chapter, the State agency shall be responsible to the Secretary for any financial losses involved in the acceptance, storage, and issuance of coupons. 7 U.S.C. § 2016(f) (1977).

As the defendants note, the legislative history regarding this section is limited to the point of being non-existent. Therefore, the defendants are correct in observing that the legislative history does not indicate that Congress intended any change in the substantive obligations of the states by the inclusion of this express requirement. Defendants' Memorandum in Support of Their Motion for Summary Judgment at 9, n.7. It can be said just as correctly, however, that the legislative history does not indicate the opposite. In fact, a determination of whether or not the new section does impose strict liability on the states for lost or stolen food stamp coupons will have to await another dispute. The interpretation of the 1977 Act is not now before the Court.

It is worth noting, however, that the 1977 Act represents a major revision in the structure and administration of the food stamp program, and that, *inter alia*, it drastically increased the federal share of state costs for investigations and prosecutions related to food stamp abuse. S.Rep.No.180, 95th Congress., 1st Sess. 118 (1977). The Act also eliminated the requirement that

eligible recipients purchase their coupons, with a view in part to improving administration of the program, reducing the possibility for abuse and significantly reducing the states' administrative burden. *Id.* at 119.

If any inference can be drawn from the fact that Congress, in the course of a major overhaul of the program, enacted a specific provision relating to states' liability for the acceptance, storage and issuance of coupons, the inference must be that no such liability was implied in the Act as it stood before the revision.

Accordingly, for the reasons stated herein, it is this 23rd day of November, 1979, by the United States District Court for the District of Maryland, ORDERED:

1. That the plaintiff's motion for summary judgment be, and the same is, hereby GRANTED;

2. That the defendant's motion for summary judgment be, and the same is, hereby DENIED; and

3. The clerk shall mail a copy of this Memorandum and Order to the counsel for the parties.

Armstrong, Teasdale, Kramer & Vaughan, Frederick H. Mayer, St. Louis, Mo., Price, Heneveld, Huizenga & Cooper, Daniel Van Dyke, Grand Rapids, Mich., for plaintiff.