Carolyn **HESS and Gunwood Davis and Mavis Duff, Individually and on behalf of all others similarly situated, Plaintiffs,**

v.

Harry R. **HUGHES, Governor, Kalman R. Hettleman, Secretary, Department of Human Resources, Individually and in their official capacities, Defendants.**

**Civ. A. No. J–80–731.**

United States District Court, D. Maryland.

June 12, 1980.

Consent Decree Aug. 22, 1980.

James J. Lyko, Judith F. Fournelle, Dennis W. Carroll, Baltimore, Md., for plaintiffs.

Sally B. Gold, John K. Anderson, Baltimore, Md., for defendants.

## MEMORANDUM AND ORDER

SHIRLEY B. JONES, District Judge.

Pending before the Court are the plaintiffs' motions for a preliminary injunction and conditional class certification. Plaintiffs request declaratory and injunctive relief to enforce the distribution of food stamps in the State of Maryland within the applicable time limitations as set forth in the Food Stamp Act, 7 U.S.C. §§ 2011–2027 and regulations, 7 C.F.R. §§ 271.1–282.11 (1979). Because the procedural history of this case is important in determining the appropriateness of preliminary injunctive relief, a short synopsis of this action would be helpful.

■ Preliminarily, however, two questions should be addressed by the Court. Defendants [1] (sometimes referred to herein as the State), at the first preliminary injunction hearing on May 16, 1980, requested the Court to consolidate the hearing with the trial on the merits pursuant to Fed.R. Civ.P. 65(a)(2). Plaintiffs at that time opposed the request as unduly restricting their right to a trial on their allegations.

At the second hearing on May 22, however, plaintiffs joined in the request. In that all the evidence and arguments on the validity of a preliminary injunction would likewise appear to the Court to be all the relevant evidence in this case, that motion shall be granted. *See Penn v. San Juan Hospital, Inc.*, 528 F.2d 1181, 1187 (10th Cir. 1975).

■ Also, defendants orally moved for summary judgment as to one of the named plaintiffs, Carolyn Hess. Hess allegedly did not receive her expedited food stamps within three days of her application. 7 C.F.R. § 273.2(i)(3). She also is the proposed named representative of a class of people in Maryland who, like her, have not received expedited food stamps within three days. Suffice it to say that there are genuine issues as to material facts which preclude the entry of summary judgment. Fed.R. Civ.P. 56(c). The defendants' oral motion is denied.

Plaintiffs Hess and Gunwood Davis filed on March 28, 1980 a complaint alleging, as mentioned earlier, serious improprieties in the distribution of food stamps in this State. Additionally, a class action pursuant to Fed.R.Civ.P. 23(a) and (b)(2) was requested. In addition to violations of the Food Stamp Act, plaintiffs also alleged violations of their right to due process as guaranteed by the Fourteenth Amendment to the Constitution of the United States.[2] Plaintiffs applied for a temporary restraining order and a preliminary injunction. Attached to the latter were three affidavits, a memorandum of law in support of the motion and numerous exhibits. Finally, a "Motion for Conditional Certification As a Class Action" and supporting memorandum of law were filed.

An amended complaint was filed on April 7, 1980, bringing into the suit another named plaintiff, Mavis Duff. At a status conference held in chambers on April 7, there appeared to the Court a reasonable

---

1. Both defendants have been sued in their official capacity and have been represented by the same attorneys from the Office of the Attorney General.

2. See *infra* at 1061.

likelihood that the plaintiffs and defendants could reach some accord. To facilitate this end and allow defendants sufficient time to garner the requisite statistical information to corroborate or controvert the plaintiffs' allegations, the Court permitted a thirty-day moratorium on the filing of further pleadings. Another status conference was scheduled for April 22. If defendants intended to contest any portion of the amended complaint, a hearing date for the preliminary injunction and conditional class certification would be set on April 22. Finally, defendants were given, if necessary, until May 7 to answer the amended complaint.

The gravamen of plaintiffs' amended complaint is that the State of Maryland through the Department of Human Resources (the state agency in charge of applying the federal food stamp program) is not determining food stamp eligibility and issuing food stamps within the time limits set forth in the federal regulations. More specifically, plaintiffs claim that the State:

1) is not screening applicants properly to determine their eligibility for expedited service, 7 C.F.R. § 273.2(i);

2) is not complying with the expedited issuance requiring three days service from date of application, for statutorily defined needy families (7 U.S.C. § 2014(d) and (e)), to date of receipt of the food stamps, 7 C.F.R. § 273.2(i)(3); and

3) is not complying with the statutory requirement that not more than thirty days should pass from the date of application to the date the food stamps should be issued, assuming eligibility. 7 U.S.C. § 2020(e)(3); 7 C.F.R. § 273.-2(g)(i).

Plaintiffs Hess and Duff claim they are eligible for expedited food stamp issuance and have been denied the food stamps within the requisite time. Plaintiff Davis claims a violation of the thirty day "normal" food stamp issuance. All seek declaratory relief to require that federal food stamps be processed and issued in accord-

ance with the statutory and regulatory provisions, and they further seek a preliminary and permanent injunction to effectuate future compliance. On this last point plaintiffs request the Court to retain continuing jurisdiction.

Defendants' answer to the amended complaint and opposition to the motion for preliminary injunction and motion for conditional class certification do not controvert plaintiffs' allegations that the State is not strictly complying with the law. Essentially defendants claim that recent substantive changes in the distribution of food stamps, the recent takeover by the State from local authorities of the food stamp program, lack of personnel and the inflationary economy have all contributed to the State's failure to strictly comply with the time limitations. They further claim that the months of January and February 1980, the months chiefly relied upon by plaintiffs as statistical evidence of non-compliance, were atypical and that additional manpower and monetary funds should result in future compliance. They urge that a preliminary and permanent injunction and class certification are far too drastic measures to take at this time.

Initially defendants contend that the Duff and Hess claims for relief are moot and therefore they can in no way be proposed named representatives of their particular sub-class.

At the hearing on May 16, defendants called to testify Sally Biser, the Supervisor of the Hampden (Baltimore City) branch office for the Department of Social Services, and Bernadette Washington, the eligibility technician in the Hampden office who interviewed Mavis Duff in December of 1979. Ms. Biser stated that she was familiar with Ms. Duff's file. The problem in December, according to her, was that Ms. Duff filed an application for food stamps in addition to requesting general public assistance (GPA).[3] According to Ms. Biser and Mrs. Washington, Ms. Duff was not eligible for PA food stamps. The reason, according

---

**3.** Ms. Biser testified that examples of public assistance were GPA, aid to families with de-

pendent children (AFDC) or supplemental security income.

to Mrs. Washington, was that the family was a mixed household,[4] *i. e.*, not all of the family members were welfare recipients, and thus Ms. Duff was instructed to apply for non-public assistance (NPA) food stamps which, according to Mrs. Washington, she could have done the same day. Defendants argue that the fact that Ms. Duff waited until February of 1980 is not attributable to them, and thus she cannot complain. Plaintiff Duff argues that a PA–NPA distinction is purely administrative and cannot affect the State's responsibility, especially when expedited food stamps are at issue, to strictly comply with the federal law and regulations.

It is clear and unrebutted from Ms. Duff's testimony that when she went into the Hampden office for public assistance and food stamps she desired help "right away." The fact that she and her daughter may have constituted a mixed household, a fact in controversy, does not negate the conclusion of this Court that defendants did not do all they should have or could have to determine if Ms. Duff was eligible for expedited food stamps.[5] There is also testimony, likewise unrebutted, that Ms. Duff finally got her food stamp application in order in February but that she did not actual-ly receive her stamps until sometime after Easter (April 6). This is not rebutted by the cryptic notation in the file "FS 32 mailed 3/11/80."

Plaintiff Hess contends in the amended complaint that she has not received and is eligible for expedited food stamps. Defendants respond that she as well as Mavis Duff, as of the date of the first hearing on the motion for preliminary injunction, have received their food stamps and hence their individual claims and requests are moot. The contention is without merit. *See Weinstein v. Bradford*, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975); *Nestler v. Bd. of Law Examiners*, 611 F.2d 1380, at 1382 (4th Cir. 1980).[6]

The declared congressional purpose behind the Food Stamp Act is to "alleviate such hunger and malnutrition . . . which [would] [enable] low-income households to obtain a more nutritious diet through normal channels of trade by increasing food purchasing power for all eligible households who apply for participation." 7 U.S.C. § 2011. This avowed intention has been scrupulously followed in the regulations and in judicial decision. *Hettleman v. Bergland*, 480 F.Supp. 782, 786 (D.Md.1979).

---

4.   Joint Exhibit No. 1, introduced on May 22, is the Department of Social Services' file on Mavis Duff. On one form, Mrs. Washington recorded some of her comments on December 21, 1979: "Past management thru her [Mavis Duff] daughter and her daughter's boyfriend [illegible] Duff states she and her daughter are buying and cooking their food together this makes it a Mixed HH, [household] for F.S. [food stamps]."

5.   While admittedly perplexed as to this administrative hodge-podge, the Court is well aware of valid administrative distinctions. The federal regulations recognize them. 7 C.F.R. § 273.-2(j). Mrs. Washington testified, however, that Ms. Duff, in December was not eligible for public assistance food stamps because she and her daughter (Shannon Duff) constituted a mixed household. Mrs. Washington testified that she *advised* Ms. Duff that she would have to apply for NPA food stamps *but did not mention expedited service.* To justify noncompliance with the spirit if not the letter of the law of the Federal Food Stamp Program on the necessity of different applications seems incongruous to this Court.

The Court would likewise be remiss if it did not state its confusion over the application process in this instant case. In Joint Exhibit No. 1 Mrs. Washington wrote on February 15, 1980 to Ms. Duff that her application for food stamps had been denied because "you are buying and cooking your food with your daughter." While the food stamp application was only for Mavis Duff, reference and questions were made with reference to her daughter, Shannon Duff, who lived with her and was apparently as destitute as Mavis Duff. Because, however, the application was only for Mavis Duff, the result was a mixed household for food stamp purposes. The entire process does not appear to be within the spirit of 7 C.F.R. § 273.2(i) but rather the ultimate in exalting form over substance.

6.   As to the "personal stake" question vis–a–vis class certification, see *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980); *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980).

With this backdrop in mind, in determining whether preliminary injunctive relief is warranted pursuant to Fed.R.Civ.P. 65(a), analysis must center initially on the balance–of–hardship test. Enunciated in *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977) and later in *North Carolina State Ports Authority v. Dart Containerline Co.*, 592 F.2d 749 (4th Cir. 1979), the relevant factors are:

a) whether the plaintiffs will suffer irreparable injury if interim relief is denied;

b) the injury to the defendants if an injunction is issued;

c) plaintiffs' likelihood of success on the merits of the dispute; and

d) the public interest.

It is the "flexible interplay" of these four factors that is determinative of whether a preliminary injunction should be issued. *Telvest, Inc. v. Bradshaw, et al.*, 618 F.2d 1029 at 1032 (4th Cir. 1980); *Maryland Undercoating Co. v. Payne*, 603 F.2d 477, 481 (4th Cir. 1979).

In balancing the likelihood of irreparable harm to the plaintiffs versus the injury to the defendants should an injunction be issued, it is clear that any administrative hardship to the State and more specifically each office in all the counties and Baltimore City is grossly outweighed (assuming noncompliance by the defendants) by the obvious deleterious effect to the plaintiffs–the lack of food. There is authority to the effect that there is no exception in the Food Stamp Act or its legislative history (either to the original enactment of 1964 or the amendments of 1977) for bureaucratic difficulties or administrative backlog. *Guiterrez v. Butz*, 415 F.Supp. 827, 831 (D.D.C. 1976). *See Rodway v. U.S. Dept. of Agriculture*, 514 F.2d 809, 818–20 (D.D.Cir. 1975). Indeed the very purpose of the program, *supra* at 1031 is inimical to justifying misapplication of the program, both regular and expedited, on the claim of administrative backlog.

Both the statistical exhibits and the deposition testimony submitted bear out that violations occurred in January and February of this year and up to the present. Defendants' Exhibit 1 attached to their memorandum in opposition to the preliminary injunction [7] reflects that there was a substantial rise in the number of applications (presumably state-wide) for NPA food stamps in January and February of this year. Exhibit 2 is a summary of an amendment to the Food Stamp Act, which became effective January 1, 1980 and which presumably has increased the workload on applications. Additionally Exhibit 7 shows the numerical and percentage growth in the years 1978, 1979 and the first month of 1980 for all the counties in Maryland and Baltimore City. All but three counties (Calvert, Carolina and Wicomico) show an increase between years 1978 and 1979. All the counties and the City show an increase in January of 1980. The statewide percent change from 1978–1979 is 30%; the change from 1979–January 1980 is 52%. Exhibit 4 is a breakdown of each county (and each branch office therein) and each of the offices within the City as to total applications received and average waiting times (from request to issuance) for both PA and NPA food stamps for March of 1980. Exhibit 8 is the same type chart for the month of April, 1980 but without the statistics for the City. Even a quick perusal of the average waiting time from application to issuance for both March and April shows continuing violations of the requisite time limitations. There have been improvements, but there are still violations. For example, in Cecil County for the month of March, the average waiting time from request to issuance of NPA food stamps (presumably the "normal" 30 day variety) was 30 days. Yet Exhibit 8 indicates that for the month of April, the average waiting

---

7. For the sake of clarity exhibits 1–5 are the defendants and were attached to their memorandum in opposition to the preliminary injunction. Defendants' exhibits 6 and 7 were attached to the "Stipulation of Facts." Defendants' exhibit 8 was attached to the supplemental memorandum in opposition to the preliminary injunction. Plaintiffs exhibits A–I were attached to their memorandum in support of the preliminary injunction while their exhibits J–L were attached to the aforementioned stipulations.

time was 40 days. In Harford County, the average waiting time for NPA Stamps was 67 days and in April, 40 days. In Queen Anne's County, the average time from request to issuance of the food stamps in March was 6 days for PA stamps and 13 days for NPA. Those figures which were still in compliance, nevertheless rose in April to 7 days and 23 days respectively. Other counties have shown a similar rise, albeit some still within the 30 day "normal" compliance or three day expedited basis for either PA or NPA food stamps, or both. For example, Howard County shows an increase in the waiting time for both PA and NPA stamps. Anne Arundel County shows an increase in NPA food stamps in April (indeed in the Glen Burnie office of that County the average waiting time for NPA food stamps increased from March to April).[8] Within Baltimore City, certain offices in March have not complied, e. g., Cherry Hill–NPA stamps; Govans–Waverly–NPA stamps; Liberty–Garrison–NPA stamps. The majority of the statistics do not take into consideration the questions of proper screening and issuance of expedited food stamps. The credible evidence is that there are severe problems in these areas and recurrent backlogs. (See Exhibit A).

■ The irreparable harm to the defendants when compared to the harm to the plaintiffs is, as mentioned earlier, grossly outweighed. *Telvest, Inc. v. Bradshaw, et al., supra.* The right to receive, where eligible, Food Stamp Act relief is a right and not a mere privilege. *Bermudez v. U. S. Dept. of Agriculture,* 490 F.2d 718, 722 (D.C.Cir.), *cert. denied,* 414 U.S. 1104, 94 S.Ct. 737, 38 L.Ed.2d 559 (1973). The regulations, pursuant to 7 U.S.C. § 2020(e)(3) state that "[t]he state agency *shall* provide eligible households that complete the initial application process an opportunity to participate as soon as possible, but not later than 30 calendar days after the application was filed." 7 C.F.R. § 273.2(g)(1) (emphasis supplied). *Accord, Lidie v. State of California,*

478 F.2d 552, 555 (9th Cir. 1973) (regulation is binding). Additionally as to expedited service, where eligible households are entitled to such a service, the State agency (defendants):

> shall mail the household's ATP or coupons no later than the close of business of the second working day following the date the application was filed.

> The State agency may offer the household the option of having the ATP or coupons mailed . . . or of having the ATP or coupons available for the household or its authorized representative to pick up no later than the start of business of the third working day following the date the application was filed. 7 C.F.R. § 273.2(i)(3)(i).

*See* 7 U.S.C. § 2020(e)(9) ("receives coupons on an expedited basis" where the household comes within the meaning of destitute, 7 C.F.R. § 273.10(e)(3)). Regardless of the defendants' spurious argument that the statute and regulations only require substantial compliance, a reasonable interpretation of the act, regulations and applicable case law require mandatory compliance. The defendants' realization of their non—compliance (depositions filed May 16, 1980), is commendable and their burdens are real and troublesome. (See Exhibit 3). These problems, however, do not excuse them from full compliance.

Another prong the Court must consider is whether the plaintiffs have raised questions of serious and substantial nature, thus making the issue(s) fair ground for litigation. *Blackwelder, supra,* at 195. Stated another way, what is the plaintiffs' likelihood of success on the merits?

> It has been said that

> [t]here is a correlation between the likelihood of plaintiff's success and the probability of irreparable injury to him. If the likelihood of success is great, the need for showing the probability of irreparable harm is less. Conversely, if the likelihood

---

**8.** Fed.R.Civ.P. 65(d) requires, if necessary, the Court to specifically set forth the reasons for the issuance of a preliminary injunction. This does not mandate an accountant–like comparison of the figures. As hereinafter set forth, the pivotal question is whether there has been compliance and not how close the State may be to full compliance.

of success is remote, there must be a strong showing of the probability of irreparable injury to justify issuance of the injunction. Of all the factors, the two most important are those of probable irreparable injury to the plaintiff if an injunction is not issued and likely harm to the defendant if an injunction is issued. If, upon weighing them, the balance is struck in favor of the plaintiff, a preliminary injunction should issue if, *at least, grave or serious* questions are presented. *North Carolina State Ports v. Dart Containerline*, 592 F.2d at 750 (emphasis supplied).

*Accord, State of North Carolina v. HEW*, 480 F.Supp. 929, 937 (E.D.N.C.1979). It is hardly problematic from what has been stated so far, that the plaintiffs' likelihood of success on the merits is overwhelming. Indeed, if it need be said, the plaintiffs have succeeded on the merits, *supra* at 1030. Fed.R.Civ.P. 65(a)(2).

Finally, the public's interest must be examined. For no other reason (and there are more) than to alleviate hunger which is a continuing problem in our society today, the public's interest is large.

Under the balance of the hardship test enunciated in *Blackwelder* and considering the "flexible interplay" of *Televest, Inc.* of these factors, the harm to these plaintiffs and potential class members in this State far outweighs any harm to the defendants. The defendants are being asked to simply comply with the law and regulations as they should have done initially. Thus a preliminary and permanent injunction will issue enjoining defendants from failing to comply with the proper screening of expedited cases, issuance of expedited food stamps and issuance of "normal" food stamps within the requisite time limitations. This injunction, as will be clarified, will *at this time* only be issued as to the named plaintiffs.

Two caveats: defendants, in one of their earlier memoranda of law questioned this Court's subject matter jurisdiction. The Food Stamp Act is an Act of Congress regulating commerce and hence this Court has jurisdiction. *Bennett v. Butz*, 386 F.Supp. 1059, 1063 (D.Minn.1974). Also, plaintiffs raise certain constitutional questions concerning deprivations of due process rights. This issue need not be addressed since this Court has issued a preliminary and permanent injunction on the statutory and regulatory grounds. Constitutional issues should only be decided under the doctrine of strict necessity. *Rescue Army v. Municipal Court*, 331 U.S. 549, 571, 67 S.Ct. 1409, 1421, 91 L.Ed. 1666 (1947).

*Motion For Conditional Class Certification*

Plaintiffs seek a conditional class certification in this case under Fed.R.Civ.P. 23(a) and (b)(2). Rule 23(a) sets forth the general requirements to proceed via a class action. Rule 23(b)(2) is the specific vehicle plaintiffs rely upon in their claim that a class action is appropriate. The factors under Rule 23(a) are:

(1) the class is so numerous that joinder of all members is impracticable [numerosity],

(2) there are questions of law or fact common to the class [commonality],

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and

(4) the representative parties will fairly and adequately protect the interests of the class [representative interests].

If these factors are met, the action may be maintained if, as plaintiffs assert, "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Rule 23(b)(2).

Plaintiffs "have the burden of establishing that the requisites of Rule 23(a) are met before they may proceed as class representatives." *Paxman v. Campbell*, 612 F.2d 848, 855 (4th Cir. 1980). Rule 23(b)(2) is primarily invoked in cases where the relief sought is injunctive. There is no requirement, however, that the defendants'

conduct be damaging or offensive to every member of the proposed class. *See Paxman v. Campbell*, 612 F.2d at 854. As plaintiffs recognize, this method has been used in federal food stamp cases. *E. g., Giguere v. Affleck*, 370 F.Supp. 154, 158–59 (D.R.I. 1974).

■ Despite the essential nature of the item at stake (food) to the named plaintiffs and the proposed class members and the persuasive merits of their class request, *supra* at 1032 the Court will not *at this time* certify a class. While the State's reasons for not complying with the time limitations were to no avail on the merits of the preliminary and permanent injunction, they are of some import in a class certification consideration. The record before the Court is replete with constant references by the defendants that additional money and manpower are being and will continue to be allocated for the food stamp program in Maryland to insure that all eligible applicants, whether for expedited or "normal" food stamps, will receive them within the applicable time limitations. The defendants vigorously contend that neither the March nor April figures adequately reflect the constant improvement in all counties and Baltimore City of the average waiting time from application to issuance.[9] As mentioned earlier in this opinion, defendants urge that class certification is too drastic a step to take when voluntary steps have already been undertaken to effectuate complete compliance.

The Court will stay the question of conditional class certification until July 15, 1980. By then the April figures for the City, and the statewide figures for May and June

should be compiled for both PA and NPA food stamps. At that time if the defendants have not fully complied with the applicable time limitations, the merits of the certification motion will be further considered. While the federal rules and regulations are mandatory, as this court has found, proceeding in this manner on the class question will give the State some flexibility in achieving complete compliance.

It has been stated in the context of food stamps that:

> the effect of this Court's holding as a precedent (particularly if upheld on appeal) will be honored by the respective State and federal administrators, and that they will doubtless make appropriate voluntary forward adjustments in the cases of other affected parties not participating in this litigation after the legal issues in controversy shall have been authoritatively settled. *Tindall v. Hardin*, 337 F.Supp. 563, 567 (W.D.Pa.1972), aff'd, [*Carter v. Butz*,] 479 F.2d 1084 (3rd Cir. 1973).

*Accord, City of Hartford v. Hills*, 408 F.Supp. 889, 892–93 (D.Conn.1976), *rev'd on other grounds*, 561 F.2d 1032 (2d Cir. 1977) (rehearing *en banc*). The Court is not prepared to adopt such reasoning at this time, nor is now predisposed to certify the class. By July 15 with additional statistical evidence at hand, the Court will be in a position to further review the merits of the class certification question.

The Court is aware of two recent pronouncements by the Supreme Court, *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980)

9. Plaintiffs deposed a number of people who are directly responsible for the supervision of the Federal Food Stamp Program in Maryland: Irvin W. Hoyer, Chief, Food Stamp Program (Dep. at 2); Francis W. Carberry, Supervisor of the Baltimore County Food Stamp Program (Dep. at 51); Gary Balzer, Assistant Director for Income Maintenance in the Department of Social Services (Dep. at 84); George W. Karras, Director of Wicomico County Department of Social Services (Dep. at 122); Mary K. Dent, Supervisor of the Food Stamp Program for Montgomery County (Dep. at 161); Ruth M. Fisher, Deputy Director of Social Services (Dep. at 191); Dorothy K. Fenhagen, Eligibility Supervisor I for the Harford County Department of Social Services (Dep. at 209); Stephen Mood, Director of the Frederick County Department of Social Services (Dep. at 241); and Sylvia Cohn, Eligibility Supervisor for Anne Arundel County Department of Social Services (Dep. at 277). All of these people testified that insufficient funds and staff created backlogs but that additional staff, both permanent and part–time, and the availability of money for overtime lead them to believe that the problems can be corrected in order to comply with the federal law and regulations.

and *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980). In *Geraghty*, the Court considered whether the denial of a motion for class certification can be reviewed on appeal after the named plaintiffs' individual claim became moot. 445 U.S. at 390, 100 S.Ct. at 1205. After considering the flexible contours of the "mootness doctrine" *id.* at 397–401, 100 S.Ct. at 1210–11, and the Court's prior holdings in *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) and *Roper*, the Court held that "an action brought on behalf of a class does not become moot upon expiration of the named plaintiff's substantive claim, even though class certification has been denied. The proposed representative retains a 'personal stake' in obtaining class certification sufficient to assure that Art. III values are not undermined." 445 U.S. at 404, 100 S.Ct. 1212. While the holding in *Geraghty* was limited to the denial of the class certification motion, *id.*, 100 S.Ct. at 1212, it is obviously persuasive authority should this court be faced with a mootness argument[10] when the final determination of class certification will be made in this case.

Accordingly, the motion for conditional class certification shall be stayed until July 15, 1980 at which time the merits, if necessary, shall be considered.

### ORDER

It is, this 12 day of June, 1980, by the United States District Court for the District of Maryland, hereby

ORDERED:

10. In *Roper* the Court was also concerned with a comparison between the "personal stake" requirement of Art. III and class certification. The Court stated that "[w]e can assume that a district court's final judgment fully satisfying named plaintiffs' private substantive claims would preclude their appeal on that aspect of the final judgment; however, it does not follow that this circumstance would terminate the named plaintiffs' right to take an appeal on the issue of class certification." 445 U.S. at 333, 100 S.Ct. at 1171.

1) That plaintiffs' Motion for Preliminary and Permanent Injunction is hereby GRANTED;

2) That plaintiffs' Motion for Conditional Class Certification is hereby STAYED until July 15, 1980; and

3) That the Clerk of the Court shall mail copies of this Memorandum and Order and the Preliminary and Permanent Injunction, to all counsel in this case.

### PRELIMINARY AND PERMANENT INJUNCTION

Upon consideration of the pleadings, affidavits and memoranda, and after hearings conducted by this Court, it is, this 12 day of June, 1980, hereby

ORDERED:

That defendants, their successors in office, agents, employees, and all persons in active concert and participation with them be and hereby are enjoined from failing to comply with the requirements of federal Food Stamp regulations (1) as to the screening of Food Stamp applicants to identify those eligible for expedited service, (2) as to the provision of Food Stamps within three working days to those applicants determined eligible for expedited service, and (3) as to the provision of Food Stamps within 30 days to those applicants eligible for ordinary participation in the Food Stamp program.

### ORDER

Upon consideration of the Motion of Plaintiffs Gunwood Davis, and Mavis Duff for certification of this action, it is by the Court this 22 day of August, 1980,

The facts and issues in *Geraghty* and *Roper* differ from those in the instant case. Indeed, the Court in *Geraghty* made no intimations whether Geraghty was a proper representative for the class but rather the holding determined that he was a proper representative "for the purposes of appealing the ruling denying certification of the class that he initially defined." 100 S.Ct. at 1214. The common sense approach and flexibility accorded the "personal stake" requirement, however, have not been lost on the Court and hopefully not on the defendants.

ORDERED that the Motion of Plaintiffs is hereby granted; and it is further

ORDERED that this action is certified, pursuant to Rule 23(a) and (b)(2) of the Fed.R.Civ.P., as a class action on behalf of a class consisting of all those persons in the State of Maryland who have completed application for the Food Stamp program and (a) meet all eligibility requirements for expedited issuance of Food Stamps but have not been screened by the Food Stamp office to identify them as eligible for expedited issuance, or (b) meet all eligibility requirements for expedited issuance of Food Stamps but have not received their allotment of food coupons within three (3) working days of the date of their application, or (c) meet all eligibility requirements for ordinary participation in the Food Stamp program but have not received their allotment of food coupons within thirty (30) days of the date of their application.

## CONSENT DECREE

On March 28, 1980, plaintiffs Carolyn Hess, et al., filed a Complaint in the United States District Court for the District of Maryland, on behalf of themselves and all other persons in Maryland similarly situated, against the Governor of the State of Maryland, Harry R. Hughes, and the Secretary of the Maryland Department of Human Resources, Kalman R. Hettleman. On April 2, 1980, an Amended Complaint was filed, including an additional plaintiff, Mavis Duff, in the action.

The issues presented to the Court were: (1) whether defendants were complying with the mandate of 7 U.S.C. § 2020(e)(9) and 7 C.F.R. § 273.2(i)(2) that the State Food Stamp agency screen Food Stamp applicants at the time of the initial request for assistance to identify those households eligible for expedited issuance of Food Stamps; (2) whether defendants were complying with the mandate of 7 U.S.C. § 2020(e)(9) and 7 C.F.R. § 273.2(i)(3)(i) that the State Food Stamp agency provide Food Stamps within three (3) working days of the date of application to those households qualifying for the expedited issuance of food coupons; and (3) whether defendants were complying with the mandate of 7 U.S.C. § 2020(e)(3) and 7 C.F.R. § 273.-2(g)(1) & (2) that the State Food Stamp agency must complete the eligibility determination process and provide food coupons to all eligible households within thirty (30) days of the date a household applies.

Because defendants agreed to provide immediate relief to the named plaintiffs in this action, the initial request for a Temporary Restraining Order was not acted upon by the Court. At a chambers conference held on April 7, 1980, the Court granted defendants an extension until May 7, 1980, to answer plaintiffs' Amended Complaint, in order to allow defendants the opportunity to determine whether or to what extent they would contest the issues presented in the action. On May 7, 1980, defendants filed their Answer and a Memorandum, conceding that they were not in complete compliance with the above–cited statutes and regulations but arguing that injunctive relief was inappropriate in this case because defendants were in "substantial compliance" with the law. Defendants noted efforts which were then being undertaken to remedy the areas of non–compliance with legal requirements and argued that existing delays in the issuance of Food Stamps were of a temporary nature. In a Supplemental Memorandum filed on May 21, 1980, defendants argued that newly–available statistics continued to show improvement, while conceding that the new statistics did not constitute substantial compliance with the law. Defendants continued to argue that their administrative efforts aimed at eliminating the delays made court intervention unwarranted.

Meanwhile, on May 13, 1980, plaintiffs deposed the State Food Stamp Director and eight (8) officials from defendants' local Food Stamp offices. This deposition evidence, plus numerous documents and the testimony of other witnesses, were considered by the Court at a hearing held on May 22, 1980, on plaintiffs' Motions for Preliminary Injunction and for Class Certification. In a Memorandum and Order dat-

ed June 12, 1980, the Court issued preliminary and permanent injunctions on behalf of the named plaintiffs Duff and Davis. The Court found that there existed "severe problems" and "recurrent backlogs" in the three (3) areas of screening for expedited service, three–day issuance in expedited service cases, and thirty–day issuance in regular Food Stamp cases. The Court specifically rejected as "spurious" defendants' argument that the statute and regulations require only substantial compliance, ruling that full compliance is the proper standard to be applied. While noting and commending defendants' improvements in recent months, the Court held that continuing administrative difficulties did not excuse them from full compliance with the law. The Court, however, deferred action until July 15, 1980, on plaintiffs' Motion for Class Certification. While noting the "persuasive merits" of plaintiffs' class request, the Court held that defendants' contention that full compliance would be achieved without a class injunction is of "some import" when deciding of the class motion. The Court therefore delayed action on the class motion in order to have the benefit of statistics measuring the State's level of compliance in April, May, and June.

At a chambers conference held on July 17, 1980, defendants suggested that final settlement of the action through a consent decree might be possible. Thereafter, counsel for the parties met and reached agreement on the terms of the decree, and each and all of them do consent to the entry of this Decree as a final and binding settlement in full disposition of any and all claims in this action by the plaintiffs against the defendants (except for the plaintiffs' claim of entitlement to attorneys' fees).

The Court has examined the terms and provisions of this Decree. It finds that they are fair, reasonable, and just, and that the rights of the affected class and each member thereof are protected adequately by this Decree. The Court also finds that the Decree is in conformity with the statutes and regulations cited *supra* and with the Federal Rules of Civil Procedure. Coincident with the signing of this Decree, the Court has certified the action as a class action.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED as follows:

(1) The Court has jurisdiction over the parties hereto.

(2) Regarding the screening requirement for expedited service: defendants will ensure that by January 31, 1981, procedures to identify households eligible for expedited service are applied to all food stamp applicants at the time of their initial request for assistance.

(3) Regarding the three–day issuance requirement for households entitled to expedited service (as defined in federal Food Stamp regulations): (a) defendants will ensure that by January 31, 1981, 75% of the Food Stamp applicants in Baltimore City who are eligible for expedited service and 90% of the Food Stamp applicants in the Maryland counties who are eligible for expedited service receive their food coupons or ATP (Authorization to Participate) card within three working days from the date the application is filed, in the following manner: defendants will either mail the food coupons or ATP card by the end of the second working day following the date the application is filed or will have the food coupons or ATP card available for manual pick–up by the start of business on the third working day following the date the application is filed; (b) by January 31, 1981, defendants will ensure that 100% of the Food Stamp applicants in Baltimore City and in the Maryland counties who are eligible for expedited service receive their food coupons or ATP card within six working days from the date the application is filed, in the following manner: defendants will either mail the food coupons or ATP card by the end of the fifth working day following the date the application is filed or will have the food coupons or ATP card available for manual pick–up by the start of business on the sixth working day following the date the application is filed; (c) by February 28, 1981, defendants will ensure that 100% of the Food Stamp applicants in

Baltimore City and in the Maryland counties who are eligible for expedited service receive their food coupons or ATP card within three working days from the date the application is filed, in the following manner: defendants will either mail the food coupons or ATP card by the end of the second working day following the date the application is filed or will have the food coupons or ATP card available for manual pick–up by the start of business on the third working day following the date the application is filed.

(4) Regarding the thirty–day issuance requirement for households entitled to Food Stamps (but not entitled to expedited service): by February 28, 1981, defendants will ensure that 100% of Food Stamp applicants in Baltimore City and in the Maryland counties who are eligible for Food Stamps receive their food coupons or ATP card within thirty (30) calendar days from the date the application is filed in the following manner: defendants will either mail the food coupons or ATP card by the 28th calendar day following the date the application is filed or will have the food coupons or ATP card available for manual pick–up by the 30th calendar day following the date the application is filed; provided that (if necessary) defendants will mail or have available for manual pick–up the ATP card or food coupons at an earlier date if no ·issuance facility is open on the 30th day. Defendants will ensure that for 100% of households eligible for Food Stamps, the ATP card will be mailed or available at such time that it can be transacted after it is received but before the thirty–day period expires.

(5) To account for isolated instances of agency error, defendants shall be considered in compliance with the terms of Paragraphs 3 and 4 of this Decree if their performance is within a 3% margin of error in each of the Maryland counties and Baltimore City, when compared to the percentage requirements specified in those paragraphs.

(6) The percentage requirements of Paragraphs 3 and 4 of this Decree shall not include those cases in which delay in the issuance of Food Stamps is attributable to the fault of the applicant, as defined in applicable Food Stamp regulations. Defendants shall be considered in compliance with the terms of Paragraphs 3 and 4 of this Decree if they meet the specified percentages for those cases in which the applicant is not the cause for any delay in the issuance of food coupons.

(7) For each month from October, 1980, through September, 1981, defendants shall submit to the Court and to opposing counsel monthly reports providing the following statistical information for each Maryland County Department of Social Services and for each district office within the Baltimore City Department of Social Services: total number of Food Stamp applications received; total number of Food Stamp applicants screened for expedited service; total number of Food Stamp applicants determined eligible for expedited service who received their food coupons (a) within three (3) working days of the date the application is filed, (b) between four (4) and six (6) working days after the date the application is filed, and (c) more than six (6) working days after the date the application is filed; total number of Food Stamp applicants determined eligible for Food Stamps (but not for expedited service); and total number of Food Stamp applicants determined eligible for Food Stamps (but not for expedited service) who received their food coupons within thirty (30) days of the date the application is filed (as specified in Paragraph 4 above). For those cases in which defendants exceed the 30–day issuance requirement for regular Food Stamps or the 3–day issuance requirement for expedited service, defendants shall also include within the monthly statistical reports (for each county and for each district office in Baltimore City) the total number of cases in which the issuance delay is attributable to the fault of the Food Stamp applicant. The monthly reports shall be submitted on or before the 25th day of the month following each month for which statistics must be provided except for the reports for the month of February, 1981, which for the Maryland

counties shall be submitted on or before the 20th day of March and for Baltimore City shall be submitted on or before the 25th day of March.

(8) This Consent Decree is intended to be consistent with the requirements of the federal Food Stamp statute and regulations regarding the screening requirement for expedited service and regarding the timeliness requirements for the issuance of food coupons to eligible applicants. The terms of this decree are subject to revision based on any future changes in that statute and those regulations. It is not intended to impose on defendants requirements in addition to those in the law and regulations, and any exception or variations to the general timeliness standards which are allowed by the law and regulations are similarly allowed by this Decree.

(9) The Court shall retain jurisdiction for purposes of enforcement of this Consent Decree upon motion of any party or upon the Court's own motion.