642 F.2d 63
 Kalman R. HETTLEMAN, Secretary, Department of Human
Resources, and William G. Sykes, Acting Director,
Maryland Social Services Administration, Appellees,
v.
Robert BERGLAND, Secretary, U. S. Department of Agriculture;
Carol Tucker Foreman, Assistant Secretary, U. S. Department
of Agriculture; Nancy Snyder, Deputy Administrator for
Family Nutrition Programs, Food and Nutrition Service, U. S.
Dept. of Agriculture; Ray Pugh, Deputy Administrator for
Financial Management and Ralph Picone, Regional Director,
Food Stamp Program, Mid Atlantic Region, U. S. Department of
Agriculture, Appellants.
 No. 80-1076.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 10, 1980.
Decided Feb. 17, 1981.
 
 Mary A. McReynolds, Civil Division, Dept. of Justice, Washington, D. C. (Alice Daniel, Asst. Atty. Gen., Washington, D. C., Russell T. Baker, Jr., U. S. Atty., Baltimore, Md., Barbara L. Herwig, Robert S. Greenspan, Civil Division, Dept. of Justice, Washington, D. C., on brief), for appellants.
 Carolyn I. Polowy, Spec. Asst. Atty. Gen., Baltimore, Md. (Stephen H. Sachs, Atty. Gen. of Maryland, Sally B. Gold, Asst. Atty. Gen., Baltimore, Md., on brief), for appellees.
 Before INGRAHAM, Senior Circuit Judge,* and HALL and ERVIN, Circuit Judges.
 ERVIN, Circuit Judge:
 
 
 1
 The Secretary of the United States Department of Agriculture (USDA) appeals the district court's, 480 F.Supp. 782, grant of summary judgment to the State of Maryland on Maryland's claim arising under the Food Stamp Act of 1964, Pub.L.No. 88-525, 78 Stat. 703 (1964), as amended and codified, 7 U.S.C. §§ 2011 et seq. (1976), challenging the validity of USDA regulation 7 C.F.R. § 271.7(c) (1976) under which strict liability for loss of food stamps is imposed on the states.
 
 
 2
 We reverse the district court's judgment that the Secretary exceeded his authority in promulgating the regulation we remand, however, for consideration of two issues not addressed by the district court.
 
 I.
 Background
 
 3
 The Food Stamp Act of 1964 authorizes the Food and Nutrition ServiceS of USDA to issue food coupons through participating states' agencies to eligible households. All states have elected to participate and are thereby eligible to receive matching administrative funds. 7 U.S.C. § 2024(b). The coupons are obligations of the United States, redeemable at face value by the U. S. Treasury. 7 U.S.C. §§ 2013, 2023(a).
 
 The matching funds are for
 
 4
 all administrative costs, including, but not limited to, the cost of (1) the certification of households; (2) the acceptance, storage, and protection of coupons after their delivery to receiving points within the States; (3) the issuance of such coupons to eligible households; (4) the outreach and fair hearing requirements of section 2019 of this title; and (5) the control and accounting of coupons.
 
 
 5
 7 U.S.C. § 2024(b).
 
 
 6
 Under the statute, the state "shall assume responsibility for the certification of applicant households and for the issuance of coupons." 7 U.S.C. § 2019(b). It is also responsible for keeping "such records as may be necessary to ascertain whether the program is being conducted in compliance with the provisions of this chapter and the regulations issued pursuant to this chapter." Id. The Secretary, however,shall by regulation prescribe appropriate procedures for the delivery of coupons to coupon vendors and for the custody, care, control, and storage of coupons in the hands of coupon vendors in order to secure such coupons against theft, embezzlement, misuse, loss, or destruction.
 
 
 7
 7 U.S.C. § 2015(c)(1).
 
 
 8
 Two provisions in the Act specifically address the question of potential state financial liability under the Act:
 
 
 9
 If the Secretary determines that in the administration of the program there is a failure by a State agency to comply substantially with the provisions of this chapter, or with the regulations issued pursuant to this chapter, or with the State plan of operation, he shall inform such State agency of such failure and shall allow the State agency a reasonable period of time for a correction of such failure. Upon the expiration of such period, the Secretary shall direct that there be no further issuance of coupons in the political subdivisions where such failure has occurred until such time as satisfactory corrective action has been taken.
 
 
 10
 7 U.S.C. § 2019(f).
 
 And:
 
 11
 If the Secretary determines that there has been gross negligence or fraud on the part of the State agency in the certification of applicant households, the State shall upon request of the Secretary deposit into the separate account authorized by section 2016 of this title, a sum equal to the amount by which the value of any coupons issued as a result of such negligence or fraud exceeds the amount that was charged for such coupons ....
 
 
 12
 7 U.S.C. § 2019(g).
 
 
 13
 Fifteen provisions authorize the Secretary to promulgate regulations. Fourteen of them relate to specific aspects of administering the food stamp program, but no provision specifically authorizes the Secretary to issue regulations regarding state liability for food stamp thefts. The general enabling provision, 7 U.S.C. § 2013(c), however, provides that
 
 
 14
 (t)he Secretary shall issue such regulations, not inconsistent with this chapter, as he deems necessary or appropriate for the effective and efficient administration of the food stamp program.
 
 
 15
 In 1970, pursuant to the general grant of rule making authority, the Secretary issued the following regulation:
 
 
 16
 If C&MS (Consumer & Marketing Service, predecessor to FNS) determines that there has been a failure on the part of the State agency to account fully for coupons distributed to it, or the sums authorized to be collected by it in payment of the purchase requirement ... the State agency shall, on demand by C& MS, pay ... the amount due as a result of such failure ....
 
 
 17
 7 C.F.R. § 1601.7(b) (1970).
 
 
 18
 This regulation was successfully challenged as too ambiguous to impose strict liability. See Louisiana v. Butz, 376 F.Supp. 703 (M.D.La.1974); New Mexico Dept. of Health & Social Services v. Secretary of Agriculture, 376 F.Supp. 953 (D.N.M.1973).
 
 
 19
 In July, 1971, the Secretary promulgated a new regulation supplanting the challenged one and imposing strict liability on the states for loss of stamps:
 
 
 20
 If FNS determines that there has been a loss of coupons distributed to the State agency, or of the sums required to be collected by it in payment of the purchase requirement ... including, but not limited to, coupons or funds lost as a result of thefts, embezzlements or unexplained causes, the State agency shall, on demand by FNS, pay to FNS the face amount of any such coupons, and the amount of such cash or cash equivalent ....
 
 
 21
 7 C.F.R. § 271.7(c) (1978).
 
 This Case
 
 22
 In 1976, the Maryland Department of Human Resources experienced thefts of food stamps from four distribution facilities; the total loss was $113,962. Although USDA sought reimbursement under § 271.7(c), Maryland refused; USDA then deducted $113,962 from Maryland's letter of credit for the State's food stamps.[1]
 
 
 23
 Maryland then sued USDA, claiming that (1) the regulation exceeded the Secretary's rule making authority, (2) the regulation was promulgated without compliance with the Administrative Procedure Act, and (3) USDA's reduction of the administrative costs payment was unauthorized by the 1964 Act.
 
 
 24
 The district court on cross motions granted summary judgment to Maryland. Based on its analysis of the 1964 Act, the court found that promulgation of the strict liability regulation exceeded the Secretary's rule making authority; because this finding was dispositive of the case, the court expressly declined to consider Maryland's second and third arguments.
 
 II.
 
 25
 We think the district court incorrectly interpreted the Act as prohibiting the Secretary from promulgating a regulation imposing strict liability on states for stolen food stamps. In Knebel v. Hein, 429 U.S. 288, 293, 97 S.Ct. 549, 552, 50 L.Ed.2d 485 (1977), the Supreme Court specifically designated the statute's delegation of authority as "broad." Knebel involved a challenge to USDA regulations and parallel state regulations which disallowed a deduction for transportation expenses in connection with a job training program for purposes of computing the income of food stamp recipients. Although the Court recognized that "(u)nder the statute's broad delegation of authority, the Secretary might have defined income in a variety of ways," 429 U.S. at 293, 97 S.Ct. at 552, it found that "the availability of alternatives does not render the Secretary's choice invalid. Moreover, a plainly acceptable reason exists for rejecting each of these possible alternatives." Id. at 294-95, 97 S.Ct. at 553-54 (footnote omitted). The regulations did operate somewhat unfairly in Knebel, but they were nonetheless "the product of a valid exercise of the Secretary's statutory authority." Id. at 294, 97 S.Ct. at 553. The Court found the source of the Secretary's authority in his duty under § 2013 to "formulate and administer a food stamp program" and to "issue such regulations, not inconsistent with this chapter, as he deems necessary or appropriate for the effective administration of the food stamp program." Imposing an apparently low standard to be applied in determining the validity of the exercise of that power, the Court found that the contested regulations were "reasonably adopted." Id. at 296, 97 S.Ct. at 554. Section 2013, as we read it, is equally broad enough to authorize a regulation imposing strict liability on the states for coupon loss: such a regulation provides an efficient mechanism for allocating loss, places responsibility for loss with the custodian of the coupons (who is most able to guard against loss) and is, if not "necessary," then at least "appropriate" for effective administration of the program.
 
 
 26
 Maryland argues, however, that the Act implies a standard of care inconsistent with strict liability, pointing to the Act's provision requiring the Secretary to issue regulations concerning the care, custody, and handling of coupons (§ 2015(c)(1)). Maryland also stresses the Act's provision for coupon cut offs for noncompliance with the Act to support its standard of care argument. While it is true that a finding of noncompliance is required prior to coupon cut offs, the remedy is an extreme one, causing greatest injury to those the Act was designed to aid. It is not inconsistent, however, to impose strict liability (hence, requiring no finding) in a situation where the remedy is not so drastic and is designed merely to maintain a smooth flow of program funds. And the provision of the Act requiring the Secretary to issue coupon custody regulations need not be read to impose a standard of care, but instead to give guidance: the government has an interest in seeing that the program runs efficiently; protective measures against theft are necessary to that end; and the Secretary, as head of the responsible agency, is in the best position to promulgate uniform "procedures" (the Act does not say "standards").
 
 
 27
 There are no cases interpreting the present regulation, although its predecessor regulation was successfully challenged in Louisiana v. Butz, 376 F.Supp. 703 (M.D.La.1974), and in N. M. Dept. of Health and Social Services v. Secretary, 376 F.Supp. 953 (D.N.M.1973). Under that regulation, the states were required to pay for stamps for which they could not "account fully." Both courts found that the language of the regulation itself could not impose strict liability.[2]
 
 
 28
 The recent case, Century Bank of Gainesville v. United States, 634 F.2d 554 (Ct.Cl., 1980), sustaining the validity of a liability allocation regulation issued pursuant to §§ 2013 and 2019, provides a suitable analogy. In Century Bank, the contested regulation made FNS liable for losses of shipments of cancelled coupons in transit to banks that are part of the federal food stamp program. It provided, however, that "(c)oupons shall not be deemed in transit while in the custody and care" of such a bank. 7 C.F.R. § 272.5. The implication was, of course, that FNS would not be liable for pre-transit losses. Century Bank sought and was refused payment for a bag of cancelled coupons that had disappeared from its mailroom. In upholding the regulation the Court of Claims found that the Secretary had authority to issue such a regulation, subject only to a standard of reasonableness:
 
 
 29
 ... the Secretary had the power to issue a regulation of this stripe. Congress had given him broad regulatory authority. (citation). The Government is not necessarily liable for coupons lost by the bank while in the bank's own custody, and can therefore free itself of such liability unless that position must be characterized as unreasonable. It is not unreasonable, however, to have the Federal Government assume liability only for "in transit" losses, where the transmitting bank had no control and there was no non-federal entity which could be responsible .... the Government was not required to disregard the fact that the bank had custody and care, and that it would not be outrageous to have the custodian to bear its own responsibility. The Secretary could, accordingly, adopt a regulation which set forth a clean rule of no pre-transit federal liability ....
 
 
 30
 at 557.
 
 
 31
 The Court of Claims found the strict liability provision to be a reasonable exercise of power primarily because it would be unduly burdensome to require the government to investigate each loss to determine fault. It did not address whether the regulation was consistent with the purpose of the Act but merely pointed to what it considered the Secretary's "broad" authority under § 2013.
 
 
 32
 The basic premise of Century Bank that imposition of strict liability for loss on custodians of stamps is, when reasonable, a valid exercise of authority and is not inconsistent with the Act can be carried over to this case.
 
 
 33
 We therefore find the contested regulation here to be a valid and reasonable exercise of the Secretary's § 2013 authority to administer the Act effectively: it is certainly justifiable as administratively precise and simple, it places responsibility for loss on the party in the best position to protect against it, and it is not an unduly harsh remedy, such as a coupon cut off, that would be contrary to the purposes of the Act.
 
 III.
 
 34
 The Secretary contends that it is unnecessary to remand this case for a consideration of the two issues the district court did not rule on in the first instance (whether offsetting Maryland's letter of credit for administrative costs was lawful and whether the regulation was promulgated in compliance with the Administrative Procedure Act) because the other two claims are "wholly unmeritorious." Reply Brief at 4. The court of appeals, however, is in no position to act on issues that the district court has expressly left undecided. We therefore remand for the district court to consider the cross motions for summary judgment on those issues.
 
 
 35
 REVERSED AND REMANDED.
 
 
 
 *
 Fifth Circuit, sitting by designation
 
 
 [1]
 One of the four claims was settled, leaving only $106,164 in dispute
 
 
 [2]
 Although both courts, in dictum, were of the opinion that the regulation was inconsistent with the regulations instructing states on the care and handling of coupons, we disagree with that opinion