**STATE OF CALIFORNIA, et al.,**
**Plaintiffs-Appellees,**

v.

**John R. BLOCK,\* Secretary of the United States Department of Agriculture, et al., Defendants-Appellants.**

No. 78–3645.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 10, 1980.

Decided Nov. 18, 1981.

---

\* We substitute John R. Block, the Secretary of the United States Department of Agriculture, as successor to the original appellant Robert Bergland, the former Secretary, pursuant to Fed.R.App.P. 43.

Al J. Daniel, Washington, D. C., argued, for defendants-appellants; Leonard Schaitman, Washington, D. C., on brief.

John J. Klee, Jr., San Francisco, Cal., for plaintiffs-appellees.

Before KENNEDY and NORRIS, Circuit Judges, and McNICHOLS,** District Judge.

KENNEDY, Circuit Judge:

This case involves an attempt by the Secretary of Agriculture to collect money from the State of California for alleged misadministration of the food stamps program. Section 10(g) of the Food Stamp Act of 1964 provided that if a state had been guilty of gross negligence or fraud in the administration of the program, the Secretary could demand return of monies to the federal government. The major issue for our consideration is whether a regulation, 39 Fed.Reg. 26,005 (1974), codified at 7 C.F.R. § 271.7(a) (Appendix to 7 C.F.R. § 276 (1980)), was within the Secretary's statutory authority under section 10(g) of the Food Stamp Act.[1] Invoking the challenged regulation, the Secretary made a determination that Los Angeles and Santa Clara counties had run the federal program in violation of its regulation, and the Secretary demanded repayment of significant sums of money by California to the federal government.

California filed this action in district court seeking injunctive and declaratory relief. It moved for summary judgment, contending the regulation justifying the action was issued in excess of statutory authority. The Secretary filed a cross-motion for summary judgment, asserting that the regulation was valid and that his determination of gross negligence was not arbitrary or capricious. The court granted the State's motion and found the regulation invalid.[2] For the reasons we state, the judgment is affirmed in part, reversed in part, and the case remanded.

By enactment of the Food Stamp Act, Congress specifically authorized the Secretary of Agriculture to "formulate and administer" the food stamp program. 7 U.S.C. § 2013(a) (1976). The Act envisioned voluntary participation by the states. Upon submittal of an acceptable state plan of operation, eligible households within the state would be issued coupon allotments for food stamps used to purchase food from approved retail stores. *Id.*; 7 U.S.C. § 2015(b) (1976). The Act further provided

---

** Honorable Robert J. McNichols, Chief Judge, United States District Judge for the Eastern District of Washington, sitting by designation.

1. All references in this opinion are to statutes and regulations in effect before the 1977 and 1980 amendments to the Food Stamp Act and resulting changes in regulations, unless otherwise noted. See note 3.

2. While the parties interpret the final order of the court below differently, it is fairly clear that the court, after determining the challenged portion of the regulation to be invalid, granted summary judgment to the State of California without reaching the question of whether California's conduct was "grossly negligent" under the valid portion of the regulation. The district court's reasoning is discernable from its order, although more explicitness on this score would have been appreciated. "Regardless of whether a finding of substantial noncompliance could have been made in this case *the regulation pursuant to which defendants acted,* 7 C.F.R. § 271.7(a) *is invalid.* Therefore, plaintiff's motion for summary judgment is granted." Order at 3 (emphasis added). Since the court found the Secretary's action in this case was wholly dependent on the challenged regulation, the court was within its discretion in not considering *the question of whether the Secretary might have found gross negligence had correct standards been applied.* *Cf. Burlington Truck Lines v. United States,* 371 U.S. 156, 168–69, 83 S.Ct. 239, 245–246, 9 L.Ed.2d 207 (1962) (court should normally consider only actual grounds of agency decision); *Securities and Exchange Comm'n v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947). A final judgment was therefore properly before us for review.

that the "Secretary shall issue such regulations, not inconsistent with this chapter, as he deems necessary or appropriate for the effective and efficient administration of the food stamp program." 7 U.S.C. § 2013(c) (1976).

The states were charged with administering the program and thus assumed "responsibility for the certification of applicant households and for the issuance of coupons." 7 U.S.C. § 2019(b) (1976). Administration of the program could be delegated to local or state agencies, but the ultimate responsibility for operation of the plan remained with the state.

The Act provided for sanctions, both criminal and administrative, against persons or entities violating provisions of the Act. Approved retail food stores may be disqualified from participating in the program if found in violation of any regulations or provisions. 7 U.S.C. § 2020 (1976). Persons illegally possessing, using, or transferring the coupons were guilty of a felony. 7 U.S.C. § 2023 (1976). Judicial review of any administrative action or decision was permitted by filing a complaint in a district court, whereupon the court would conduct a de novo trial to determine the validity of the questioned administrative action. 7 U.S.C. § 2022 (1976).

States were also subject to sanctions for failure to comply with the Act, and it is that aspect of the statute which concerns us here. Section 10(f) of the Act fixed a sanction on the state for substantial noncompliance with the federal program. If the Secretary were to determine that a state agency has failed "to comply substantially with the provisions of this chapter, or with the regulations issued pursuant to this chapter, or with the State plan of operation, he shall inform such State agency of such failure and shall allow the State agency a reasonable period of time for the correction of such

failure." 7 U.S.C. § 2019(f) (1976). Should the state fail to remedy the problems within the prescribed time period, the Secretary "shall direct that there be no further issuance of coupons in the political subdivisions where such failure has occurred until such time as satisfactory corrective action has been taken." Id.

The bill as reported by the House contained only the foregoing provision as a penalty for state mismanagement of the program. The Senate added what became section 10(g), 7 U.S.C. § 2019(g) (1976). That section, the one at issue in this case, provided:

> If the Secretary determines that there has been gross negligence or fraud on the part of the State agency in the certification of applicant households, the State shall upon request of the Secretary deposit into the separate account authorized by section 2016 of this title, a sum equal to the amount by which the value of any coupons issued as a result of such negligence or fraud exceeds the amount that was charged for such coupons under section 2016(b) of this title.

Id.

The legislative history surrounding the adoption of this amendment is sparse. According to the Senate Report, the intent behind its enactment was "to impress upon the States the equal responsibility they share with the Federal Government for limiting the program to those households of low income which cannot afford to purchase a low-cost nutritionally adequate diet." S.Rep.No.1124, 88th Cong., 2d Sess. 12 (1964), reprinted in [1964] U.S.Code Cong. & Ad.News 3275, 3286. Colloquies between and statements by Senators on the floor reveal that either gross negligence or fraud was intended to be the necessary predicate for state liability. 110 Cong.Rec. 15431, 15433, 15438–39 (1964).[3]

---

**3.** The Senate specifically rejected a proposed amendment requiring a state to share the costs of bonus stamps issued to persons not on other relief programs administered by that state, persons most likely to be improperly certified. It was thought section 10(g) sufficed to create the desired incentives for careful and efficient administration of the program while at the same time the sanction was not so severe as to deter states from certifying deserving recipients. Id. at 15431, 15440–41.

To implement the remedy of section 10(g), the Secretary of Agriculture at first issued a regulation merely restating the provision. Amended in 1971 to reflect the latest changes in the source of eligibility requirements, the regulation again reiterated the statute's language:

> If FNS determines that there has been gross negligence or fraud on the part of the State agency in the initial certification of applicant households, the recertification of households, or the issuance of coupons, the State shall, on demand by FNS, pay to FNS a sum equal to the amount of any free coupons issued as a result of such negligence or fraud.

36 Fed.Reg. 14,110 (1971) (codified at 7 C.F.R. § 271.7(a) (1974)).

The instant dispute concerns provisions in a further amendment to the regulation, issued on July 25, 1974. The addition significantly altered the prior regulation by defining certain circumstances that were to be treated as "gross negligence":

> If FNS determines that there has been gross negligence or fraud on the part of the State agency in the initial certification of households, any subsequent certification of households, or the issuance of coupons, the State shall, on demand by FNS, pay to FNS a sum equal to the amount of any free coupons issued as a result of such negligence or fraud. *Gross negligence shall include those State agency actions in connection with certification and coupon issuance which are in substantial noncompliance with the provisions of this subchapter and which result in a loss of Federal funds. It shall also include those State agency actions with respect to certification and coupon issuance which would not be considered grossly negligent in themselves, but which, after previous admonition by FNS and the lapse of a reasonable period of time to take corrective measures, continue to result in substantial losses of Federal funds.*

39 Fed.Reg. 26,005 (1974) (codified at 7 C.F.R. § 271.7(a) (Appendix to 7 C.F.R. § 276 (1980)) (emphasis added).

California contests the validity of the italicized portion of this regulation on the ground that it equates substantial noncompliance with gross negligence and thus impermissibly combines two statutory sanctions intended to be distinct. Section 10(f) mandated termination of coupon distribution to any state in substantial noncompliance with the Act. Section 10(g) required a state to reimburse the federal government for the amount of bonus stamps issued as a result of fraud or gross negligence on the part of the state. The State argues that section 271.7(a), by equating substantial noncompliance with gross negligence, compounds the sanction of 10(f) with that of 10(g) without reference to any standard of care, thereby thwarting the will of Congress. The district court agreed and ruled the regulation invalid.

---

The acts of the State of California at issue here occurred between 1971 and 1974. Since then, the relevant organic statute has been amended twice, each time giving clearer authority to the Department of Agriculture to collect money from erring state agencies. Pub.L. 95–113, 91 Stat. 958, § 1301 (1977); Pub.L. 96–249, 94 Stat. 357, §§ 120, 126 (1980). We would have a very different case if this matter had been brought pursuant to the current relevant statute, 7 U.S.C.A. § 2020(g), (h) (West 1981 Supp.), and regulations, 7 C.F.R. § 276 (1981).

It would, however, be "manifest injustice," *see Bradley v. School Dist. of City of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), to apply these new standards to acts which were performed under a statute which, for example, required "gross negligence" rather than "negligence" as a predicate for a state's liability. *Cf. Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 17, 101 S.Ct. 1531, 1539, 67 L.Ed.2d 694 (1981) ("The legitimacy of Congress' power to legislate under the Spending Power thus rests on whether the State voluntarily and knowingly accepts the terms of the 'contract' .... There can, of course, be no knowing acceptance if a state is unaware of the conditions or is unable to ascertain what is expected of it."); *see also State of New Jersey Department of Education v. Hufstedler*, 662 F.2d 208, 213–216 (3rd Cir. 1981). Our concern is, therefore, with the 1964 Food Stamp Act, and not with any changes which experience may have indicated were warranted. If anything, later amendments to the Act strengthen our conclusion that the original intent of Congress was as we have determined it.

■ Our inquiry must focus on the language, structure, and legislative history of the Food Stamp Act. *Whirlpool Corp. v. Marshall*, 445 U.S. 1, 11, 100 S.Ct. 883, 890, 63 L.Ed.2d 154 (1980). In reviewing the district court's ruling, we need not defer to its interpretation of the regulation, for the issue is purely one of law. *Washington State Farm Bureau v. Marshall*, 625 F.2d 296, 302 (9th Cir. 1980).

■ At the outset, we note that the regulation was issued pursuant to the general enabling section of the Act,[4] which has been construed by the Supreme Court as conferring a broad grant of authority to the Secretary of Agriculture. *Knebel v. Hein*, 429 U.S. 288, 292–93, 97 S.Ct. 549, 552–53, 50 L.Ed.2d 485 (1977). *See Hettleman v. Bergland*, 642 F.2d 63, 66 (4th Cir. 1981). It is well-settled, moreover, that the regulation need only be reasonably related to the purposes of the enabling legislation to be upheld. *Mourning v. Family Publication Serv., Inc.*, 411 U.S. 356, 369, 93 S.Ct. 1652, 1660, 36 L.Ed.2d 318 (1973); *American Hosp. Management Corp. v. Harris*, 638 F.2d 1208, 1212 (9th Cir. 1981). We are further mindful of the deference typically accorded to agency constructions of its own enabling legislation and regulations. *See, e. g., Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 566, 568, 100 S.Ct. 790, 797, 798, 63 L.Ed.2d 22 (1980); *American Hosp. Management Corp. v. Harris, supra*, 638 F.2d at 1212.

■ Nonetheless, our primary task when testing the statutory authority of a challenged regulation must always be to determine the intent of Congress. In this case, "gross negligence" has a meaning of which Congressmen must have been aware. In using the word "negligence," Congress required fault before a state would be liable to the Secretary for financial losses. When an attempt was made to enact no-fault cost-sharing into the Food Stamp Act, it

lost in the Senate.[5] In adding the word "gross," Congress' manifest intent was to require that the fault be extreme. Gross negligence in this context, therefore, is a qualitative measure of administrative performance, determined by indices such as diligence, good faith attempts to implement the regulations, responsiveness to the regulatory scheme, and general competence in administration of the program. These factors are not necessarily absent because an audit shows misallocation of funds or other errors in certification. Owing to confusing and complex regulations and procedures, difficult to comprehend or apply, it is conceivable that a state may without negligence attempt to apply the provisions of the Act, yet fail substantially. In fact, the regulation itself acknowledges as much in that the second challenged sentence addresses state actions in substantial noncompliance but not grossly negligent.

While Congress required case-by-case evaluation of the facts against a gross negligence standard before states could be found liable under section 10(g), the Secretary might well choose to promulgate regulations listing either representative examples of gross negligence, or guidelines for its determination, so that states subject to sanctions would be better informed of the boundaries of prohibited conduct.

■ We conclude the agency departed from congressional intent, and thus exceeded its authority, in promulgating the first of the two challenged sentences. The sentence in question provides:

> Gross negligence shall include those State agency actions in connection with certification and coupon issuance which are in substantial noncompliance with the provisions of this subchapter and which result in a loss of federal funds.

Substantial noncompliance may be gross negligence or evidence of gross negligence,

---

4. There are fifteen provisions for the Secretary to promulgate regulations, fourteen of which relate to specific provisions within the Act. Since there are no specific provisions permitting promulgation of regulations pertaining to the liability of the states, the authority must be

derived from the general enabling statute, 7 U.S.C. § 2013 (1976). *See Hettleman v. Bergland*, 642 F.2d 63, 66 (4th Cir. 1981).

5. See note 3.

but the required showing of serious fault must be made before the state is subjected to liability. Substantial noncompliance is not automatically gross negligence. Congress placed "substantial noncompliance" and "gross negligence" in separate statutory categories, with separate sanctions, 7 U.S.C. § 2019(f), (g) (1976), and the Secretary acted improperly in mingling them. The district court was correct insofar as it held the first challenged sentence invalid.

We do uphold the second challenged sentence, as bearing a "reasonable relation" to the purposes of the Act, and not conflicting with congressional intent:

> [Gross negligence] shall also include those State agency actions with respect to certification and coupon issuance which would not be considered grossly negligent in themselves, but which, after previous admonition by FNS and the lapse of a reasonable time to take corrective measures, continue to result in substantial losses of Federal funds.

This section, as we read it, does not displace the requirement that serious fault be demonstrated in a particular case, as a necessary predicate for recovery. The sentence does no more than state that failure to correct serious and costly errors brought to the attention of a state agency, after a "reasonable time" to correct them has elapsed, may rise to the level of gross negligence. It is essential to the administration of a large social welfare program that errors, once identified, be corrected. Serious lapses on this score may be grossly negligent. The challenged sentence does no more than give notice of this fact. By incorporating a "reasonable time to correct" standard, moreover, the sentence is consistent with the case-by-case analysis of fault Congress required in the 1964 Act.

On remand, if the Secretary pursues this matter, the district court must decide if the Secretary's action can be upheld based solely on the valid portions of the regulations. The parties do not discuss, and we do not decide, the proper standard of review in the district court.

The judgment of the district court below is affirmed in part, reversed in part, and remanded for such additional proceedings, consistent with this opinion, as the district court deems appropriate.