690 F.2d 139
 STATE OF MISSOURI, ex rel., David R. FREEMAN, Director,
Department of Social Services, State of Missouri; and James
R. Moody, Director, Division of Family Services, Department
of Social Services, Appellants,
v.
John R. BLOCK, Secretary, United States Department of
Agriculture; and Billy W. Wood, Regional Administrator, Food
and Nutrition Service, United States Department of
Agriculture-Mountain Plains Region, Appellees.
 No. 82-1653.
 United States Court of Appeals,
Eighth Circuit.
 Submitted July 16, 1982.
Decided Oct. 12, 1982.
 
 John Ashcroft, Atty. Gen., Michael H. Finkelstein, Asst. Atty. Gen., Jefferson City, Mo., for appellants.
 J. Paul McGrath, Asst. Atty. Gen., Washington, D. C., Robert G. Ulrich, U. S. Atty., Kansas City, Mo., Jane A. Restani, Paul A. Blaine, Civ. Div., Dept. of Justice, Washington, D. C., for appellees.
 Before LAY, Chief Judge, and HEANEY and McMILLIAN, Circuit Judges.
 HEANEY, Circuit Judge.
 
 
 1
 The State of Missouri (State) appeals a district court[1] order granting summary judgment for the United States Department of Agriculture (USDA). The State filed this action requesting declaratory, injunctive, and other appropriate relief from past and potential USDA offsets of federal funds otherwise available to the State under the Food Stamp Act of 1964, 7 U.S.C. §§ 2011-2029. The district court held the State strictly liable for lost funds it owed to the Food and Nutrition ServiceS of the USDA under the food stamp program. It found that regulations imposing strict liability were within the USDA's authority, that they were properly promulgated, that the defense of assumption of risk was unavailable to shield the State's liability herein, and that the offset procedure threatened and used by the FNS was lawful. We affirm the district court's order, but remand for it to retain jurisdiction for further proceedings as to appropriate relief.
 
 I.
 BACKGROUND
 
 2
 This case is not new to the Court. We have fully detailed its background in a connected criminal appeal previously decided. United States v. Lanier, 578 F.2d 1246, 1248-1249 (8th Cir.), cert. denied, 439 U.S. 856, 99 S.Ct. 169, 58 L.Ed.2d 163 (1978). Accordingly, we briefly summarize the relevant facts.
 
 
 3
 The federal food stamp program is administered by the USDA in conjunction with the states. Individual states agree with the USDA concerning plans for state distribution of food stamp coupons provided by the federal government. The federal government shares the administrative cost of such distribution plans. Missouri's plan provided for distribution through private vendors which contracted with the Missouri Division of Family Services. In 1975, Moneytown, Inc., was one of those private vendors.
 
 
 4
 Moneytown's contract with the State, as well as FNS instructions, required Moneytown to deposit receipts from its sale of food stamp coupons in a FNS account in the Federal Reserve Bank of St. Louis. From May to September, 1975, Moneytown failed to make various deposits and falsified records to cover those failures. The receipts which were not deposited totaled $1,012,925.75. To date, these funds remain missing.
 
 
 5
 From March 11, 1976, through February 10, 1978, FNS made three demands for reimbursement of these funds from the State. Its demands were based on regulations in effect in 1975 which required the State to pay for lost coupons and lost receipts from the sale of coupons. 7 C.F.R. § 271.7(b) (1975). In the third and final demand, it warned that it would take further steps to effect collection if the State did not pay within thirty days. After several fruitless communications in 1979, FNS notified the State that it would collect by administrative offset of funds otherwise payable to the State under the food stamp program. FNS recovered $84,434.00 by offset, and continues to threaten future offsets.
 
 
 6
 The State filed the present action for relief from these offsets. The district court granted summary judgment for the USDA. The State filed a timely notice of appeal and sought an injunction barring future offsets pending appeal. We granted such an injunction on June 30, 1982.
 
 II.
 MERITS OF THE CASE
 
 7
 The State contests all four of the conclusions of law reached by the district court. We affirm each of those conclusions.
 
 
 8
 A. Authorization for USDA Strict Liability Regulations.
 
 
 9
 USDA regulations in effect in 1975 clearly placed the risk of loss of food stamp coupons and the receipts therefrom on the states.[2] The district court, relying on Hettleman v. Bergland, 642 F.2d 63 (4th Cir. 1981), held that the USDA had authority to promulgate such "strict liability" regulations. We also agree with the basic reasoning in Hettleman on this issue.
 
 
 10
 The USDA promulgated the regulations in issue pursuant to a section of the 1964 Food Stamp Act which read: "The Secretary shall issue such regulations, not inconsistent with this chapter, as he deems necessary or appropriate for the effective and efficient administration of the food stamp program." 7 U.S.C. § 2013(c) (1976) (current version substantially similar, at id. (Supp.III 1979)). This provision delegated broad regulatory authority to the USDA. Knebel v. Hein, 429 U.S. 288, 293, 97 S.Ct. 549, 553, 50 L.Ed.2d 485 (1977). The strict liability regulations promulgated pursuant to this broad authorization are at the very least "appropriate" to the "effective and efficient administration" of the program. They provide a strong incentive for the states to take serious precautions in supervising the handling of food stamp coupons and receipts. Moreover, they place "responsibility for loss with the custodian of the coupons" and receipts, Hettleman v. Bergland, supra, 642 F.2d at 66, instead of more distant supervisory entities such as the USDA.
 
 
 11
 The State argues that language in the Emergency Food Stamp Vendor Accountability Act of 1976, enacted subsequent to the regulations being considered, indicates that Congress did not authorize a strict liability standard. In particular, the State relies on 7 U.S.C. § 2015(c)(1) (1976) (amended 1977), which instructed the USDA to prescribe procedures for the "custody, care, control, and storage of coupons in the hands of coupon vendors in order to secure such coupons against theft, embezzlement, misuse, loss, or destruction." Coupon vendors convicted of violating such procedures could be fined and/or imprisoned. Id. at § 2015(c)(2). Even if later action by Congress may be helpful in interpreting an earlier statute, this argument is still unavailing. The Court in Hettleman responded to this same argument by noting that the statutory language at issue provided for "procedures" to guide coupon vendors in caring for coupons; it did not create a standard of care inconsistent with strict liability on the states for coupon or receipt loss. Hettleman v. Bergland, supra, 642 F.2d at 66-67. Although the Hettleman response does not fully examine the fact that the "procedures" authorized by this 1976 legislation were enforceable by criminal penalties and, thus, were more than mere "guidance," we need not make this examination either since we find independent support for the result reached.
 
 
 12
 First, the 1976 legislation authorized regulatory procedures enforceable against coupon vendors that contracted with state agencies to distribute food stamps, not against the state agencies themselves. Based on the language and purpose of this statute, strict liability on the states, through their agencies, is consistent with such authorization as an additional measure of protection against mishandling of coupons. Moreover, the legislative history of the 1976 statute identifies the legislation as a protective measure over and above the liability of the states. The House Report explained:
 
 
 13
 In contrast with the specific penalties applying to food stamp recipients and grocers, the Act contains no penalties with respect to vendors who abuse the food stamp program. Therefore, under the existing Food Stamp Act, if a vendor fails to timely deposit money it collects on food stamp purchases, the Department's only recourse is to proceed against the State agency in whose jurisdiction the practice is occurring.
 
 
 14
 The Food Stamp Act and the regulations governing the food stamp program are quite explicit in assigning to the State agencies the full liability and responsibility for the proper accounting for food stamps in their custody, and for cash received in the issuance process. Despite this liability and responsibility(,) States have not, by and large, become aggressively involved in issuance and accountability systems.
 
 
 15
 H.R.Rep.No.94-1282, 94th Cong., 2d Sess. 7, reprinted in 1976 U.S.Code Cong. & Ad.News 1492, 1498.
 
 
 16
 Congress's action to supplement strict liability, where such liability was sometimes ineffective in safeguarding food stamp coupons and receipts, indicates approval of that standard rather than an assertion of prior lack of authority for its regulatory adoption.
 
 
 17
 B. Procedure for Adoption of USDA Strict Liability Regulations.
 
 
 18
 The State also contests the procedural manner in which the USDA promulgated the strict liability regulations. The district court dismissed this contention based on the analysis of the same issue by the Hettleman district court on remand, Hettleman v. Bergland, No. 78-2039 (D.Md. Nov. 27, 1981) (slip opinion). We affirm this conclusion.
 
 
 19
 Assuming that the notice, comment, and statement of purpose procedures found in the Administrative Procedure Act (APA), 5 U.S.C. § 553, apply to the strict liability regulations at issue,[3] the USDA properly followed those procedures. The USDA gave notice of the essence of 7 C.F.R. § 271.7(b) (1975) at 36 Fed.Reg. 7240, 7247-7248 (April 16, 1971), prior to its publication in final form at 36 Fed.Reg. 14110 (July 29, 1971). The State argues that because the USDA changed the language from the April 16 notice, which made the states liable for failure to "account fully" for coupons delivered to them, to the July 29 final regulations, making the states liable if FNS determined that there had been a "loss of coupons" so delivered, it did not comply with the notice and comment requirements of the APA. The comments received by the USDA subsequent to the April 16 notice, expressing several states' concern that the proposed regulations would make them strictly liable for lost coupons and lost receipts, however, show that the April 16 notice sufficiently apprised the public of the strict liability approach explicitly taken in the final regulations. The USDA accordingly received public comment on this issue.
 
 
 20
 The State further alleges that because the USDA failed to explain this shift in language in its October 16 explanation of the July 29 final regulations at 36 Fed.Reg. 20145 (1971), it violated its obligation to "incorporate in the rules adopted a concise general statement of their basis and purpose," 5 U.S.C. § 553(c). But this "statement of purpose" requirement is designed to enable reviewing courts to understand the factual and legal background behind the agency action; it does not require a statement explaining every minute aspect of final rules which are inherently explanatory. American Standard, Inc. v. United States, 602 F.2d 256, 269, 220 Ct.Cl. 411 (1979); Alabama Association of Insurance Agents v. Board of Governors of Federal Reserve System, 533 F.2d 224, 236-237 (5th Cir. 1976), vacated in part on motion for rehearing, 558 F.2d 729 (5th Cir. 1977), cert. denied, 435 U.S. 904, 98 S.Ct. 1448, 55 L.Ed.2d 494 (1978). We agree with the reasoning of the Hettleman district court on remand that the change in language was only to clarify the regulations to better manifest the prior understanding of the USDA and the public of their strict liability tenor. Thus, the APA did not require a more precise statement of purpose. Hettleman v. Bergland, supra, slip op. at 9-11.
 
 
 21
 C. Unavailability of Assumption of Risk Defense to the State's Liability.
 
 
 22
 The State further argues that by regulating coupon vendors, the USDA assumed the risk of the apparent conversion by Moneytown. This argument is raised by analogy to the assumption of risk defense available in some strict products liability cases. See, e.g., Collins v. B. F. Goodrich Co., 558 F.2d 908, 911 (8th Cir. 1977) ("assumption of risk" or "contributory fault" defense in products liability case involves plaintiff voluntarily and unreasonably encountering known hazard which produces injury). The State contends that because it was bound to follow USDA regulatory procedures in its supervision of Moneytown, the USDA assumed the risk of loss resulting from Moneytown's illegal actions that were difficult to detect under those procedures. In fact by late June, 1975, the State had notified the USDA of difficulties in its audit and deposit reconciliation activities caused by USDA's practice of not providing confirmation of coupon vendor deposits. Although the State's argument possesses a measure of equitable appeal, we agree with the district court that the assumption of risk defense is unavailable to shield the State from the strict liability imposed under 7 C.F.R. § 271.7(b) (1975).
 
 
 23
 The State agreed to participate in the food stamp program under the regulations and its proposed plan of operation. The strict liability regulations were clear. In effect, the State and the USDA agreed which party would bear the risk of loss such as the one which actually occurred. On these facts, we decline to create a defense to the liability thereby imposed which neither Congress nor the USDA had contemplated.
 
 
 24
 D. Legality of Administrative Offset.
 
 
 25
 The State finally asserts that the USDA did not, and still does not, have the authority to recover its claim against the State by means of an administrative offset of funds otherwise payable to the State under the food stamp program. We disagree. The district court relied on the rationale of the Hettleman district court on remand to uphold past and potential offsets by the USDA. See Hettleman v. Bergland, supra, slip op. at 11-12 (citing the Federal Claims Collection Act of 1966, 31 U.S.C. § 952(a), and various regulations pursuant thereto to justify offset procedure). We likewise find that the regulations in effect at the time of the $84,434.00 offset in the fourth quarter of 1980 allowed such an offset. See 7 C.F.R. Part 277 (1980) (continuing applicability of 7 C.F.R. § 275.11(e)(2) (1979) which allowed withholding of payments for indebtedness to the United States where such would not impair program objectives). Current USDA regulations would support future offsets of the State's established liability in this case. 7 C.F.R. § 276.2(d) (1982) (offset expressly allowed where State fails to pay an FNS billing). We find no merit in the State's attack on the legislative authority underlying these collection regulations.
 
 III.
 APPROPRIATE RELIEF
 
 26
 We agree that the State of Missouri is strictly liable for the lost funds in this case. We agree that the prior offset by the USDA was lawful. We are disturbed, however, that the immediate, total assertion of USDA's legal right to future offsets on the facts of this case could result in serious harm to the real victims of this loss-Missouri food stamp recipients. Although the USDA apparently will offset the State's liability only against its fifty percent sharing of administrative expenses rather than against coupons made available to Missourians, the offset might hamper the efficient and timely distribution of those coupons. And no coupon can benefit a recipient until placed into that person's hands.
 
 
 27
 The parties are in the best position to arrive at an offset schedule which will fulfill the State's liability to the USDA with the least harm to food stamp recipients. We therefore, strongly encourage agreement to this end.[4] We direct the district court to retain jurisdiction, however, in case such an agreement is not reached within sixty days of this decision. In that event, the district court shall conduct further proceedings to fashion relief appropriate to the facts of this case,[5] taking into consideration the effect any USDA offset proposal would have on services provided to the citizens of Missouri, especially on the distribution of food stamp coupons.
 
 
 28
 We emphasize that our directions to the district court concerning possible imposition of an offset schedule are limited to the facts of this case. By letter of June 24, 1975, the State informed the USDA of difficulty in its audit and reconciliation process. This difficulty was at least in part attributable to USDA's failure to supply current deposit confirmations to the State either directly or through the Federal Reserve Bank. The Federal Reserve Bank of St. Louis began such a practice in October, 1975, the month directly following the loss at issue here. Even though the State is strictly liable for this loss, earlier cooperation by the USDA might have averted some of it. In this situation, equity will permit the court to impose a reasonable delay in the full repayment of the loss. Rosado v. Wyman, 397 U.S. 397, 421-422, 90 S.Ct. 1207, 1222-1223, 25 L.Ed.2d 442 (1970) (New York welfare program which violated federal statute allowed to continue for a reasonable time for state to devise a complying program); Hecht Co. v. Bowles, 321 U.S. 321, 329, 64 S.Ct. 587, 591, 88 L.Ed. 754 (1944) (essence of equity jurisdiction is power "to mould each decree to the necessities of the particular case"); see also Lemon v. Kurtzman, 411 U.S. 192, 194, 199-200, 93 S.Ct. 1463, 1468-1469, 36 L.Ed.2d 151 (1973) (Supreme Court upholding district court's refusal to enjoin payment of $24 million set aside by Pennsylvania to fund nonpublic sectarian schools even after finding such funding violated the Constitution).
 
 
 29
 We are aware that current USDA regulations state that the FNS "may offset the amount of loss from the State agency's Letter of Credit in accordance with § 277.16(c)." 7 C.F.R. § 276.2(d) (1982). The provision elaborating on the offset procedure recommends that offsets be in a lump sum, but provides that "(i)f recovery of funds through the offset procedure is not possible in one lump sum, FNS shall make appropriate adjustments to recover the funds in not more than three fiscal years." 7 C.F.R. § 277.16(c)(2) (1982). This mixture of permissive and mandatory language makes interpretation of these regulations difficult. Nonetheless, even if the regulations are read to require all offsets within three years, the district court may delay offset in this case for a longer period consistent with its equitable remedial powers.
 
 IV.
 CONCLUSION
 
 30
 We affirm the district court's interpretation of the applicable law. That law must be justly applied on the facts of this case to avoid further harm to the innocent food stamp recipients who are pawns in this contest between governmental entities. We therefore remand for the district court to retain jurisdiction for further proceedings to fashion appropriate relief, if such becomes necessary, consistent with this opinion.
 
 
 
 [1]
 The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri
 
 
 [2]
 7 C.F.R. § 271.7(b) (1975) read in pertinent part:
 If FNS determines that there has been a loss of coupons distributed to the State agency, or of the sums required to be collected by it in payment of the purchase requirement, * * * including but not limited to, coupons or funds lost as a result of thefts, embezzlements or unexplained cause, the State agency shall, on demand by FNS, pay to FNS the face amount of any such coupons, and the amount of such cash or cash equivalent.
 Current regulations contain similar language. 7 C.F.R. §§ 276.1(a)(1) and 276.2(b)(2) (1982) (using express language of strict liability).
 
 
 [3]
 The USDA does not contest the applicability of the APA in this case
 
 
 [4]
 The record shows years of unsuccessful negotiations between these parties as to the liability issue in this case. With that issue resolved, however, we are confident that the parties can arrive at a mutually agreeable offset schedule with little difficulty
 
 
 [5]
 The State filed this complaint seeking declaratory and injunctive relief, under 28 U.S.C. §§ 2201 and 2202, and "such further relief as the court may deem just and proper * * *."