998 F.2d 718
 In re ALTABON FOODS, INC., a California Corporation, Debtor.
COSSA & SONS, Appellant,
v.
TANI FARMS; Los Dos Valles Harvesting & Packing Co., Inc.;
LCB Holding, Inc.; Martin A. Rechnitzer, Trustee;
Fidelcore Business Credit Corp.; Aetna Life Insurance
Company; George Griffith, Appellees.
 No. 91-56472.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 8, 1993.
Decided July 12, 1993.
 
 William A. Anderson and Thomas S. Clark, Arrache, Clark & Potter, Bakersfield, CA, for appellant.
 Karl E. Block and Sandro F. Piedrahita, Robinson, Diamant, Brill & Klausner, Los Angeles, CA, for appellees.
 Appeal from the United States Bankruptcy Appellate Panel of the Ninth Circuit.
 Before: BROWNING, TANG, and BOOCHEVER, Circuit Judges.
 PER CURIAM:
 
 
 1
 Cossa & Sons and its predecessor Cossa & Son grew hybrid broccoli and cauliflower and sold it to Altabon Foods for processing. Several of the contracts provided for payment periods of 45-60 days. After Altabon filed for bankruptcy, Cossa & Sons notified the Department of Agriculture of its intent to seek trust protection under the Perishable Agricultural Commodities Act (the Act) for $426,784.46 in unpaid deliveries of produce. LCB Holdings, a creditor of Altabon, filed an action requesting a determination of the extent and amount of Altabon's trust obligations under the Act, and Martin Rechnitzer, the trustee, filed counter and cross claims. Cossa & Sons filed an answer asserting its entitlement to trust protection. LCB and Rechnitzer jointly moved for summary judgment, arguing Cossa & Sons was not entitled to trust protection because the sales contracts contained payment periods in excess of 30 days, in violation of regulations promulgated by the Secretary of Agriculture. The bankruptcy court granted the motion and the Bankruptcy Appellate Panel affirmed.
 
 
 2
 We review de novo the Bankruptcy Appellate Panel's construction of the Perishable Agricultural Commodities Act. In re San Joaquin Food Service, Inc., 958 F.2d 938, 940 (9th Cir.1992). The Act provides:
 
 
 3
 Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.
 
 
 4
 7 U.S.C. § 499e(c)(2). To preserve the benefits of the trust, the seller must give written notice of his intent to preserve trust benefits to the Secretary of Agriculture and the debtor
 
 
 5
 within thirty calendar days (i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary, (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction, or (iii) after the time the supplier, seller, or agent has received notice that the payment instrument promptly presented for payment has been dishonored.
 
 
 6
 7 U.S.C. § 499e(c)(3).
 
 
 7
 The Secretary of Agriculture issued regulations that establish "the time prescribed by which payment must be made" under § 499e(c)(3)(i) as between ten and twenty days, with ten days as the standard period. 7 C.F.R. § 46.2(aa). The regulations also provide, with respect to private agreements under § 499e(c)(3)(ii), that "[t]he maximum time for payment for a shipment to which a seller, supplier, or agent can agree and still qualify for coverage under the trust is 30 days after receipt and acceptance of the commodities...." 7 C.F.R. § 46.46(f)(2).
 
 
 8
 Cossa & Sons argues the Secretary did not have authority to establish a maximum time for private agreements to extend the payment period under § 499e(c)(3)(ii) because § 499e(c)(3)(ii) does not establish or mention a maximum period and contains no express grant of authority to the Secretary to establish such a period.[1]
 
 
 9
 "It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress." Bowen v. Georgetown University Hospital, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988). "Faced with ... a problem of defining the bounds of its regulatory authority, an agency may appropriately look to the legislative history and underlying policies of its statutory grants of authority." United States v. Riverside Bayview Homes, Inc., 474 U.S. 121, 132, 106 S.Ct. 455, 462, 88 L.Ed.2d 419 (1985); accord California v. Block, 663 F.2d 855, 860 (9th Cir.1981) ("Our inquiry must focus on the language, structure, and legislative history of the ... Act.... [O]ur primary task when testing the statutory authority of a challenged regulation must always be to determine the intent of Congress.").
 
 
 10
 The statute is silent on the question whether the Secretary of Agriculture may establish a maximum payment period for private agreements. Faced with this silence, the Secretary "appropriately look[ed] to the legislative history." The House report on § 499e(c) states:
 
 
 11
 [T]he Committee does not intend the trust to apply to any credit transaction that extends beyond a reasonable period. Under the bill the Secretary is required to establish, through rulemaking, the time by which, the parties to a transaction must agree payment on a transaction must be made, to qualify it for coverage under the trust. An agreement for payment after such time will not be eligible to receive the benefits of the trust.
 
 
 12
 H.R. No. 543, 98 Cong., 1st Sess. 7, reprinted in 1984 U.S.C.C.A.N. 405, 410. When describing markup of the bill in the House Agriculture Subcommittee on Domestic Marketing, the report states:
 
 
 13
 It was also agreed in response to a question as to when payment must be made to satisfy the trust that the Secretary would establish through rulemaking the time by which payment on a transaction must be made and that an agreement for payment after such time would not be eligible to receive the benefits of the trust. It was made clear that open-ended credit would not be allowed and that in the rulemaking proceedings everyone would have an opportunity to comment as to the outer limit that should be established for payment.
 
 
 14
 Id. at 12, 1984 U.S.C.C.A.N. at 415 (emphasis added); see also id., 1984 U.S.C.C.A.N. at 416 ("The Committee also agreed as to the intent of the bill as reflected in the Subcommittee markup section of the report."). Combined with the general grant of rulemaking power in 7 U.S.C. § 499o, the legislative history unambiguously demonstrates that Congress intended the Department of Agriculture to set a maximum period for private agreements to extend the payment period.
 
 
 15
 The legislative history also suggests the Secretary's choice of a thirty-day maximum period for private agreements is reasonable. Congress stated ten days is the normal payment period in the produce industry, while thirty days is considered "slow payment." See H.R. No. 543 at 3, reprinted in 1984 U.S.C.C.A.N. at 406 ("Normal terms within the industry require payment within ten days after delivery of the produce although there are many instances where credit is advanced which allows additional time to pay for the shipment."); id., 1984 U.S.C.C.A.N. at 407 ("In recent years, produce sellers have been subjected to increased instances of buyers [sic] failure to pay and slow payments. Recent statistics show that slow pay situations, that is instances in which buyers pay sellers 30 days or later from the time of receipt of invoice, have increased...."). The Secretary of Agriculture's findings are consistent with these statements. See 49 Fed.Reg. 34024, 34026 (Aug. 28, 1984) ("Current payment practices, as reflected by administrative experience and industry sources, indicate that contracts calling for payment within 30 days from receipt and acceptance of the goods should qualify for trust coverage, and that contracts that call for later payment should not qualify for trust coverage."); 49 Fed.Reg. 45735, 45737 (Nov. 20, 1984) ("administrative experience and industry sources indicated a 30-day period is reasonable"). In light of these statements and findings, the thirty-day maximum period for private agreements "is based on a permissible construction of the statute." Chevron, U.S.A., Inc. v. NRDC, Inc., 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).[2]
 
 
 16
 Affirmed and remanded. Each side will bear its own costs.
 
 
 
 [1]
 Cossa acknowledges that 7 U.S.C. § 499o, which grants the Secretary the power to "make such rules, regulations, and orders as may be necessary to carry out the provisions of this chapter," is a general grant of regulatory authority that allows the Secretary to promulgate regulations governing private agreements to extend the payment period. Cossa claims, however, that § 499o does not allow the Secretary to establish a maximum time period because § 499e(c)(3)(ii) says nothing about such a limit
 
 
 [2]
 In its remaining claims, Cossa & Sons argues the bankruptcy court did not enter judgment against it, but against its predecessor Cossa & Son. Cossa & Sons also claims disputed issues of fact precluded summary judgment. We reject these claims for the reasons stated by the Bankruptcy Appellate Panel, except that we remand to the bankruptcy court with instructions that it correct its judgment to substitute Cossa & Sons for Cossa & Son